No. 14,405.

Bedford, State Treasurer v. Colorado National Bank of Denver.
(91 P. [2d] 469)

Decided April 17, 1939. Rehearing denied May 29, 1939.

Mr. Byron G. Rogers, Attorney General, Mr. Elmer P. Cogburn, Assistant, for plaintiff in error.

Messrs. Bartels, Blood & Bancroft, for defendant in error.

*En Banc.*

Mr. Justice Bock delivered the opinion of the court.

This action was brought by plaintiff in error under the Uniform Declaratory Judgments Act, '35 C. S. A., chapter 93, sections 78-92, to obtain a judicial declaration that the state has the power to compel national banks to collect and remit service taxes upon depository services performed by such banks to the public, in compliance with the Public Revenue Service Tax Act of 1937 (S. L. '37, c. 240).

Upon the filing of an amended petition defendant in error answered, to which answer plaintiff in error demurred. The demurrer was overruled. It was previously agreed that the party against whom the ruling on demurrer was made would stand upon such ruling. Plaintiff in error made that election and the court decreed, ''That all services performed by defendant in operating safety deposit boxes and vaults are exempt from taxation'' under the Public Revenue Service Tax Act, supra. Reversal of that decree is sought here, and the assignment of errors, in substance, raise two questions, namely: (1) Upon whom is the service tax imposed, the party rendering the service or the one who uses it? (2) Does the requirement to collect and remit the tax upon depository service constitute a burden upon, or an interference with, the proper functions of a national bank as a governmental agency?

Reference will hereinafter be made to plaintiff in error as treasurer and to defendant in error as the bank.

It may be conceded that if the bank is the party

upon which the tax is solely imposed, then the act as to national banks would be contrary to the federal statutes (U. S. Revised Statutes, section 5219, U. S. C. A. Title 12, section 548), and invalid. The pertinent provisions are:

"The legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:

"1. (a) The imposition by any state of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause."

This section was intended to protect capital invested in national banks from unfriendly discrimination by the states in the exercise of the taxing power. *Adams v. Nashville* (Tenn. 1877), 95 U. S. 19, 30, 24 L. Ed. 369; *Mercantile National Bank v. City of New York* (C. C. N. Y. 1886), 28 F. 776 (affirmed 1887), 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895; *Roberts v. American National Bank of Pensacola* (1929), 97 Fla. 411, 121 So. 554; *Des Moines National Bank v. Fairweather* (Iowa, 1923), 263 U. S. 103, 106, 44 Sup. Ct. 23, 68 L. Ed. 191; *Minnehaha National Bank v. Anderson* (Dist. Ct., S. D. 1924), 2 F. (2d) 897.

It heretofore has been determined that a state can only tax a national bank with the consent of Congress and not otherwise. *First National Bank v. Anderson*, 269 U. S. 341, 46 Sup. Ct. 135, 70 L. Ed. 295, and numerous other authorities. Section 5219, supra, furnishes the exclusive authority governing state taxation as to national banks. *Bank of California v. Richardson*, 248 U. S. 476, 39 Sup. Ct. 165, 63 L. Ed. 372.

Whether this principle of implied constitutional immunity from the taxation of national banks has been modified, when a nondiscriminatory tax is levied on the safety deposit box service performed by such banks, by recent opinions of the Supreme Court of the United States in *Graves v. People ex rel.*, 59 Sup. Ct. 595, 83 L. Ed. 577, and in *State Tax Commission v. Van Cott*, 59 Sup. Ct. 605, 83 L. Ed. 588, is not necessary for us to determine. According to the views therein expressed, the trend is definitely to narrow implied constitutional intergovernmental immunity.

Before discussing the assignment of errors, we direct our attention to section 4 (a) of our service tax act, which provides, in effect, that a bank must procure a license to conduct a safety deposit box business, and conducting such a business without procuring the necessary license constitutes a misdemeanor. Excepted from this provision are persons who hold licenses under any other statute and those performing services of a professional, technical or scientific nature. It is conceded that the bank is authorized under its federal charter to do a safety deposit box business. The state, therefore, cannot require it to take out this license or collect the fee therefor from the bank. *Bank of California v. Portland*, 157 Ore. 203, 69 P. (2d) 273, 275; *Austin v. Seattle*, 176 Wash. 654, 30 P. (2d) 646; *City of Shelbyville v. Citizens Bank of Shelbyville*, 114 S. W. (2d) 719. Section 4 (a), supra, does not contemplate the licensing or collection of the fee therefor from all persons performing and collecting taxable services under the act. In so far as this section is concerned, if applied to national banks, it would, under the above authorities, be invalid. No attempt is made in the instant case to enforce it. In fact, the treasurer says that no license fees are demanded from the bank. The validity of this section of the act, however, does not affect other portions thereof as applied to the bank. Section 22 declares it as the legislative intent that it would have passed the act irrespective of the

fact that any one or more sections be declared invalid. It may be assumed, therefore, that the bank is not required to comply with section 4 (a) of the act.

Our first concern under the assignment of errors is whether the service tax involved here is imposed upon the bank and whether it bears this tax burden. We think not.

In our determination of this question it is necessary that we quote certain pertinent portions of the act, as follows:

"Section 2. (c) The term 'services rendered or performed' shall mean all acts or services rendered, furnished or performed for a valuable consideration by any person engaged in any business or occupation hereinafter designated and defined, when said act or service is rendered, *furnished or performed for the ultimate user thereof. The term 'user' shall mean the person for whom or for whose benefit services are rendered or performed.*

\* \* \*

"(e) The term 'taxpayer' shall mean any person obligated to account to the state treasurer for taxes collected or to be collected or due the state under the terms of this act.

"(f) The term 'tax' means *either the tax payable by the person procuring or for whose benefit a service is rendered or performed subject to tax,* or the aggregate amount of taxes due from the person rendering, performing or furnishing services during the period for which he is required to report his collections, as the context may require.

\* \* \*

"(h) \* \* \* taxes paid on gross taxable services represented by accounts found to be worthless and actually charged off for income tax purposes may be credited upon a subsequent payment of the tax herein provided, but if any such accounts are thereafter collected by the taxpayer, a tax shall be paid upon the amount so collected.

"Section 5. From and after the effective date of this

act there is hereby *levied and imposed upon the services specified in this act and measured by the amount paid* therefor and there shall be collected and paid:

\* \* \*

"(c) A tax equivalent to two (2) per cent of the value of services rendered or performed by any person engaging or continuing in any of the following businesses: \* \* \* banks, finance companies, trust companies and depositories, \* \* \*.

"Section 6. Every person rendering or performing services shall be liable and responsible for the payment of the entire amount of the said two (2) per cent tax imposed and payable upon his total taxable services rendered or performed, and shall before the fifteenth day of each month make a return to the state treasurer for the preceding calendar month, and remit all taxes collected and due the state from him, to the state treasurer, *less three (3) per cent thereof to cover the expense of the person rendering or performing services in the collection and remittance of said tax.* \* \* \*

"(b) Persons rendering or performing services shall, as far as practicable, add the tax imposed under this act, or the average equivalent thereof, to the value of services or charges showing such tax as a separate and distinct item and when added such tax shall constitute a part of such value of service or charge, shall be a debt from the user to the person rendering or performing service until paid, and shall be recoverable at law in the same manner as other debts.

\* \* \*

"(d) It shall be unlawful for any person rendering or performing service to advertise or hold out or state to the public or to any user, directly or indirectly, *that the tax or any part thereof imposed by this act will be assumed or absorbed by him* or that it will not be added to the value of service rendered, or if added that it or any part thereof will be refunded. Any person violating

any of the provisions of this section shall be guilty of a misdemeanor.

"Section 7. All services rendered or performed, the rendering or performing of which is now subject to an excise tax under the laws of this state, and all services rendered or performed to the United States government, to the state of Colorado, its departments and institutions, and the political subdivisions thereof in their governmental capacities only and all services rendered or performed to religious, charitable and eleemosynary corporations, in the conduct of the regular religious, charitable or eleemosynary functions and activities and all services rendered or performed to or by educational institutions, directly under the supervision and control of a religious sect or denomination in the conduct of the regular educational functions and activities, and all *services rendered or performed which the state of Colorado is prohibited from taxing under the Constitution or laws of the United States,* or the state of Colorado, *shall be exempt from taxation under this act;* provided that should a dispute arise between the person rendering or performing services and the user or state treasurer as to whether or not any services rendered or performed is exempt from taxation hereunder, nevertheless the person rendering or performing services shall collect and the user shall pay such tax, and the person rendering or performing services shall thereupon issue to the user a receipt or certificate on forms prescribed by the treasurer, showing the names of the person rendering or performing services and the user, the items of services rendered, the date, the value of services, the amount of tax paid and a brief statement of the claim of exemption. The user thereafter may apply to the state treasurer for a refund of such taxes, and it shall be the duty of the treasurer to determine the question of exemption, subject to review by the courts, as hereinafter provided; provided further that a refund shall be made, or a credit allowed, for the tax so paid under dispute by any user who has an exemption

as in this act provided. Such refund shall be made by the state treasurer after compliance with the following conditions precedent:

"Applications for refund must be made within sixty (60) days after the rendering or performance of services whereon an exemption is claimed and must be supported by the affidavit of the user accompanied by the original paid invoice, receipt and certificate issued by the person rendering or performing services, and be made upon such forms as shall be prescribed and furnished by the state treasurer, which forms shall contain such information as said state treasurer shall prescribe. Upon receipt of such application the treasurer shall examine same with all due speed and shall give notice to the applicant by order in writing of his decision thereon. Aggrieved applicants may, within ten (10) days after such decision is mailed to them, petition the treasurer for a hearing on the claim in the manner provided in this act. The right of any person to a refund under this article shall not be assignable and such application for refund must be made by the same person who paid the tax thereon as shown in the invoice, receipt or certificate.

"Section 12. All sums of money paid by the user to the person rendering or performing services as taxes imposed by this act shall be and remain public money, the property of the state of Colorado, in the hands of such person rendering or performing services and he *shall hold the same in trust for the sole use and benefit of the state of Colorado until* paid to the state treasurer as herein provided, and for failure to so pay to the state treasurer, such person rendering or performing services may be punished as provided by law." (All italics ours).

The legislative intent seems to be clear, i.e., to impose a tax upon the user of the service. The levy is "imposed upon the services specified in this act." In holding that this is a tax upon the user, we are fortified by a number of authorities construing similar acts. In fact, the great weight of authority is definitely in that direction. *Breaux*

*Ballard v. Shannon,* 271 Ky. 553, 112 S. W. (2d) 996; *Covington v. Tax Commission,* 257 Ky. 84, 77 S. W. (2d) 386; *Wiseman v. Phillips,* 191 Ark. 63, 84 S. W. (2d) 91; *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016; *School District v. Smith* (Mo.), 111 S. W. (2d) 167; *Long v. Roberts & Son,* 234 Ala. 570, 176 So. 213.

In construing a similar act (Sales Tax Act, chapter 144, '35 C. S. A.), we have recently held that the sales tax involved is not imposed upon the dealer; that he is merely the state's agent to collect and he is compensated for that service. *Bedford v. Hartman Brothers, Inc.,* 104 Colo. 190, 89 P. (2d) 584.

In the instant case the direct tax burden is not upon the bank. It is the state's agent to collect and it is compensated for that service. The tax when collected by the bank is the property of the state, which it holds in trust for the sole use and benefit of the state until paid to the treasurer as provided by law. While the bank is liable to the state for the tax, the act itself is so worded that the bank does not carry any of the tax burden unless it refuses to comply with certain terms of the act. To that extent, as applied to the bank, it is a "taxpayer" within the meaning of section 2 (e), supra, and the liability is a "tax" within the meaning of section 2 (f), supra.

The second question under the assignment of errors requires us to answer whether the duties imposed upon national banks by the terms of the act, requiring them to collect and remit the tax upon their safety deposit box service, constitutes a burden upon or an interference with the proper functions of a national bank as a governmental agency. This also involves the exemption in section 7, supra, upon which the bank relies, That a national bank is a governmental agency and therefore an instrumentality through which the government performs certain fiscal functions cannot be questioned. *M'Culloch v. Maryland,* 4 Wheat. 316, 4 L. Ed. 579. The national bank system was devised, primarily, to provide a national currency, secured by a pledge of United States bonds, and

they are agencies or instruments of the government for that purpose. *Davis v. Elmira Savings Bank,* 161 U. S. 275, 16 Sup. Ct. 502, 40 L. Ed. 700. Their powers are defined and limited by the acts of Congress. *Federal Intermediate Credit Bank v. L'Herisson,* 33 F. (2d) 841.

 There is no congressional requirement that a national bank conduct a safety deposit box service. The relationship created under such service is that of bailor and bailee and not that of debtor and creditor. *Tuckerman v. Mearns,* 262 Fed. 607. A depository service rendered by a national bank is purely incidental to and not a necessary incident to its banking business.

 Under Title 12, U. S. C. A., section 24, it is provided, "That in carrying on the business commonly known as the safe-deposit business the association shall not invest in the capital stock of a corporation organized under the law of any state to conduct a safe-deposit business in an amount in excess of 15 per centum of the capital stock of the association actually paid in and unimpaired and 15 per centum of its unimpaired surplus." This would indicate that a national bank may conduct a safety deposit box business under a separate state organization, with limitations.

Section 5228, United States Revised Statutes, Title 12, U. S. C. A., section 133, prohibits national banks from continuing business after notice by the comptroller of default, "except to receive and safely keep money belonging to it, and to deliver special deposits." *National Bank v. Graham,* 100 U. S. 699, 25 L. Ed. 750. From this it may be inferred that safety deposit box service is clearly separable from the banking business as a governmental instrumentality under the federal law.

Counsel for plaintiff in error place great reliance upon the case of *Bank of California v. Portland, supra.* That case involved only authority of the city to require a license and payment of a fee therefor by banks conducting a business of "safe-deposit vault." Much said in that case concerning the power of national banks to con-

duct safety deposit vaults is merely obiter dicta. We already have indicated that we are not here concerned with the imposition of license fees on banks which conduct a safety deposit box business. We are in agreement with the conclusions announced in the Portland case.

That the tax involved in the instant case is non-discriminatory cannot be questioned. It applies to all banks, state and national, and to any person conducting a safety deposit box business, independent of banking operations. We do not disagree with cases which hold that the receiving of special deposits is a power incidental to the business of banking. What we do say is, that it is not a necessary power to the conduct of a banking business, the absence of which would prevent the bank from discharging its duties to the government. In other words, there is nothing in the service tax act that would burden the bank, as a governmental instrumentality, in conducting its banking business. *In re Leavy*, 85 F. (2d) 25. How, we may ask, do the requirements of the service tax act interfere with any powers of the bank or burden its governmental activities? Every law, state or national, controlling banks, implies a restraint, but is the restraint involved here such a burden upon national banks as would impair their operations as governmental agencies?

In *McClellan v. Chipman*, 164 U. S. 347, 17 Sup. Ct. 85, 41 L. Ed. 461, Mr. Justice White, commenting upon the relationship between state and federal laws, as applied to national banks, quotes from *National Bank v. Commonwealth*, 9 Wall. 353, 362, as follows: "National banks 'are subject to the laws of the state, and are governed in their daily course of business far more by the laws of the state than of the nation.' All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are based on state law. It is only when the state law incapacitates the banks from

discharging their duties to the government that it becomes unconstitutional'.''

There is nothing in the service tax act which incapacitates the bank from discharging its duties to the government. That, after all, is the test: whether there is any unconstitutional interference with the operations of, or burden imposed upon, the bank by the applicable provisions of the act.

Mr. Chief Justice Hughes, in the recent case of *James v. Dravo Contracting Co.*, 302 U. S. 134, 82 L. Ed. 155, 58 Sup. Ct. 208, discusses the validity of a state income tax imposed by the state of West Virginia upon the gross receipts of the Dravo Company under contracts with the United States, as follows:

''Second. Is the tax invalid upon the ground that it lays a direct burden upon the federal government? The Solicitor General, speaking for the government, supports the contention of the state that the tax is valid. Respondent urges the contrary.

''The tax is not laid upon the government, its property or officers. *Dobbins v. Commissioners,* 16 Pet. 435, 449, 450.

''The tax is not laid upon an instrumentality of the government [citing cases]. Respondent is an independent contractor. The tax is nondiscriminatory.

''The tax is not laid upon the contract of the government [citing cases]. The application of the principle which denies validity to such a tax has required the observing of close distinctions in order to maintain the essential freedom of government in performing its functions, without unduly limiting the taxing power which is equally essential to both nation and state under our dual system.''

Mere operation of safety deposit vaults by a national bank does not, in itself, involve a governmental relation with the federal government. In fact, recent federal authorities give basis for the belief that even if the service tax were imposed upon the bank, under the circumstances

in the instant case, it would not be an interference with any instrumentality of the government and would be valid. It is not necessary for us to, and we do not, pass upon that question.

Counsel for the bank argue that the creation of a first and prior lien upon it (see section 11, Service Act) in the event of its failure to collect and pay, imposes a direct burden upon it as a federal instrumentality. Whether or not this contention is well founded is not an issue in the instant case. We leave that question open. The act is enforceable without the creation of this lien as applied to a national bank.

We conclude, that the tax created by the service tax act is imposed, not upon the bank, but upon the user of the service, and that the requirement that the bank collect and pay the same to the treasurer, under the circumstances detailed in the act, is not an unconstitutional burden upon, nor does it unlawfully interfere with, the bank as a governmental instrumentality. The constitutional immunity claimed by the bank does not apply.

In view of our conclusion, we do not discuss other questions raised.

The judgment is reversed and the cause remanded, with instructions to sustain the demurrer to the answer of the bank, and for further proceedings according to law.

MR. JUSTICE BURKE and MR. JUSTICE KNOUS dissent.

MR. JUSTICE FRANCIS E. BOUCK not participating.