## No. 25503

**City of Boulder, Colorado, a municipal corporation v.
The Regents of the University of Colorado, a body corporate**
(501 P.2d 123)

Decided September 18, 1972.     Rehearing denied October 10, 1972.

Walter L. Wagenhals, City Attorney, Gilbert M. Sackheim, Assistant, for plaintiff-appellant.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, John P. Holloway, Assistant, for defendant-appellee.

Kenneth G. Bueche, for Colorado Municipal League as amicus curiae.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This action against the Regents involves an ordinance of the

City of Boulder which provides for an admissions tax upon charges made to attend public events. Boulder sought a declaratory judgment and asked for judgment for past taxes. The trial court held the ordinance to be valid but, as applied to events held under the auspices of the University of Colorado, the defendant Regents of the University could not be compelled to collect the tax. We affirm in part and reverse in part as to the validity of the ordinance, and affirm the ruling that the Regents cannot be compelled to collect the tax. This disposition of the matter renders moot the issues of whether the Board of Regents is liable for taxes which it did not collect in the past and whether they are liable for interest thereon and penalties as specified in the ordinance.

The ordinance (No. 3661) provides that every person who pays to gain admission to any place or event in the City that is open to the public shall pay an excise tax of 5% of the admission price. It places a duty upon the "owner or operator," who charges the admission fee, to collect and remit the tax. By way of illustration, the ordinance lists the following as being included within the events giving rise to the imposition of the tax:

"(1) Any performance of a motion picture, stage show, play, concert or other manifestation of the performing arts.

"(2) Any sporting or athletic contest, exhibition or event whether amateur or professional.

"(3) Any lecture, rally, speech of [sic] dissertation.

"(4) Any showing, display or exhibition of any type, such as an art exhibition . . . ."

Under an administrative regulation the "owner or operator" may retain 1 1/2% of the tax as a collection and remittal fee.

The parties stipulated as follows:

"Certain portions of the curricula offered at the University of Colorado require students to attend events held on campus for which an admission is charged. Such event would be taxable by the Boulder Ordinance. For example, students taking certain English Drama and English Literature courses are sometimes required by their professors to attend various

'manifestations of the performing arts' held at the University Theatre. Students in the Social Science Departments are sometimes required to attend 'lectures, dissertations and speeches' held out of class at Macky Auditorium. Those in the Fine Arts Department are sometimes required to attend various 'art exhibitions' which come to the Boulder campus. Those in the Music Department are required to attend various concerts while many of the dramatic performances and plays are made compulsory for those in the Performing Arts Department. Many of these lectures, dissertations, art exhibitions, concerts and dramatic performances are brought in directly by the University, through its various academic departments, or by the faculty or various studnt groups."

I.

We consider first the question of whether the Regents can be compelled to collect the tax, assuming for the moment that the tax is valid. It is the position of the City that, since it has not been shown that collection of the tax created an undue burden upon or interference with the operation of the University, the Regents can be compelled to make collection. The City relies upon *Bedford v. Colorado National Bank,* 104 Colo. 311, 91 P.2d 469 (1939), *aff'd,* 310 U.S. 41, 60 S.Ct. 800, 84 L.Ed. 1067 (1940).

Colo. Const. art. VIII, § 5 provides that the University is an institution of the State of Colorado. Colo. Const. art. IX, § 14 states:

"The board of regents shall have the general supervision of the university, and the exclusive control and direction of all funds of, and appropriations to, the university."

Colo. Const. art. IX, § 12 provides that the Regents constitute a body corporate.

We quote with approval the following portion of the ruling by the trial court:

"[I]n the instant case the City is attempting to impose duties on the Board of Regents which would necessarily interfere with the Regents' control of the University. The Constitution establishes a state-wide University and vests control in the Board of Regents. The Board of Regents has *exclusive*

control and direction of all funds of, and appropriations to, the University . . . . Thus, the City of Boulder cannot force the Regents to apply any funds toward the collection of the tax in question. Even if the City claims that sufficient funds would be generated by the tax to compensate the Regents for collection expense, and, arguably, such funds could be paid to the Regents by the City, the Regents are still vested with the 'general supervision' of the University. The University would necessarily be required to expend both money and manpower for the collection, identification and payment of such funds to the City. This interferes with the financial conduct of the University and the allocation of its manpower for its state-wide educational duties. Argument then might be raised that when the framers of the Constitution utilized the word 'general' rather than 'exclusive' in describing the supervisory power of the Regents that some area might be open for a city to impose duties without conflicting with the Regents' authority. However, this argument is incompatible with Article VIII, Section 5 of the Constitution of Colorado which, in establishing the state institutions provides the management thereof to be subject,

'. . . to the control of the state, under the provisions of the Constitution, and such laws and regulations as the General Assembly may provide . . .'

"Thus, since the Constitution has established a state-wide University at Boulder and vested general supervisory control in a state-wide Board of Regents and management in control of the state, a city, even though a home rule city, has no power to interfere with the management or supervision of the activities of the University of Colorado. If the City of Boulder was allowed to impose duties on the University, such duties would necessarily interfere with the functions of the state institution. There is no authority to permit the City of Boulder to force a state institution to collect such a local tax. Consequently, the City of Boulder cannot require the Board of Regents of the University of Colorado to become involuntary collectors of the City of Boulder's Admission Tax."

Involved in *Bedford v. Colorado National Bank, supra,* was the imposition by the State of a 2% tax on the service of furnishing safe deposit boxes. The tax was to be paid by the person who rented the box, and was to be collected and remitted by those furnishing the boxes. The issue was whether the State could compel a national bank — an instrumentality of the federal government — to collect and remit the tax. It was ruled that the bank was required to collect the tax. The reasoning there was that (1) the incidence of the tax was on the customer, not the bank; and (2) the duty of collecting the tax did not constitute an undue burden on the bank because (a) furnishing safe deposit boxes was not an essential function of the bank, and (b) the bank was permitted to keep 3% of the sum collected to reimburse it for the cost of collection.

*Bedford* was a 4 to 2 decision. We need not comment upon the correctness of this opinion because we find it distinguishable from the instant matter. There the State was the taxing authority and here a city is the taxing agency. So far as the questions involved here are concerned, the Regents are the State. Even with all the powers granted home rule cities under Colo. Const. art. XX, § 6, a home rule city is still a subdivision of the State. We hold that no municipality, absent statutory authority, can compel the State or its officials to collect municipal taxes.

In *Hamilton v. City and County of Denver,* 176 Colo. 6, 490 P.2d 1289 (1971), we held the application of Denver's occupational privilege tax against state employees to be valid. We did not say that the State could be compelled to collect it. We take judicial notice of the fact that the State now is voluntarily deducting the tax from the compensation paid to those State employees who request the State to do so, and is remitting the amount collected to Denver. The State has not been compelled to do this.

II.

We now consider the validity of the tax as applied to University functions, and we emphasize that we do not rule on any other application of the tax. When academic

departments of the University, or others acting under the auspices of the University, sponsor lectures, dissertations, art exhibitions, concerts and dramatic performances, whether or not an admission fee is charged, these functions become a part of the educational process. This educational process is not merely for the enrolled students of the University, but it is a part of the educational process for those members of the public attending the events. In our view the home rule authority of a city does not permit it to tax a person's acquisition of education furnished by the State. We hold that the tax is invalid when applied to University lectures, dissertations, art exhibitions, concerts, and dramatic performances.

   ██ In reaching this conclusion we have been influenced by the reasoning of *City of Tempe v. Del E. Webb Corp.*, 13 Ariz. App. 597, 480 P.2d 18 (1971); *City of Tempe v. Arizona Board of Regents*, 11 Ariz. App. 24, 461 P.2d 503 (1969); *Board of Regents of Universities v. City of Tempe*, 88 Ariz. 299, 356 P.2d 399 (1960); *Borough of Wilkinsburg v. School District*, 365 Pa. 254, 74 A.2d 138 (1950); and *Marson v. City of Philadelphia*, 342 Pa. 369, 21 A.2d 228 (1941). The production of revenue from an activity does not change its nature from an educational endeavor to a commercial venture. *See Church Divinity School v. County of Alameda*, 152 Cal. App. 2d 496, 314 P.2d 209 (1957); and *County of Hanover v. Trustees of Randolph-Macon College*, 203 Va. 613, 125 S.E.2d 812 (1962).

   ██ We now consider the tax as applied to University football games held on the campus. It is alleged in the complaint that the anticipated annual tax realized from University of Colorado football admissions would be approximately $41,000 (and that $9,000 tax would be raised annually from all other University events). It is obvious that the primary interest of the City is to obtain the tax from paid admissions to football games. *Allen v. Regents*, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448 (1938), has been cited to us and there is a statement in the brief by the City, "It is debatable whether an intercollegiate football game or a folk rock

musical is an essential part of a liberal education." Rather anomalously, except for that citation and that statement, the record and the briefs are devoid of any facts or arguments disclosing a connection or lack of connection between football and the educational process. In *Allen* the Court *assumed* that the holding of athletic contests is an integral part of the program of public education. It nevertheless upheld a federal 10% admissions tax as applied to the University of Georgia and the Georgia Tech football games. We do not find *Allen* persuasive, one way or another.

Absent a showing that football is so related to the educational process that its devotees may not be taxed by a home rule city, we should not make a finding of fact or conclusion of law that it is so related. The alternative is to affirm, and, therefore, we affirm on the validity of the tax as applied to football. We surmise that, under our ruling in the first portion of this opinion combined with the rights of the Regents to control the operation of football games on the campus, any ruling on the validity of the tax as applied to University football games is probably academic.

The judgment of the trial court is reversed in part on the question of the validity of the tax as we have expounded, and otherwise is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE ERICKSON concur in part and dissent in part.

MR. CHIEF JUSTICE PRINGLE concurring in part and dissenting in part:

I dissent from that portion of the majority opinion which holds that lectures, dissertations, art exhibitions, concerts and dramatic performances are not subject to the admissions tax insofar as the majority opinion applies to non-students.

In my view, when the University offers entertainment functions to the general public for a price, then it must be considered in the same category as any private enterprise offering entertainment. The admissions tax is therefore valid, in my view, with respect to members of the general public attending such functions. I have the same view with respect

428

to football games and other athletic contests.

I feel, however, that the admissions tax is not valid as to students who attend any functions held under the auspices of the University, including athletic contests, as the control of the fees which they pay for such functions rests solely with the Regents under our constitution, and the City has no power to place an additional burden on the student who attends a University function.

Other than stated herein, I concur with the majority opinion. I am authorized to say that MR. JUSTICE ERICK-SON concurs in the statements I make here.