## No. 26028

Clarke Reed Watson v. The Board of Regents of the University of Colorado: Harry G. Carlson, Joseph Coors, Dale M. Atkins, Robert N. Gilbert, Fred Betz, Sr., Byron L. Johnson, individually and in their capacity as the Board of Regents of the University of Colorado; Frederick Thieme, individually and in his capacity as President of the University of Colorado; William A. Douglas, individually and in his capacity as Dean of Admissions of the University of Colorado

(512 P.2d 1162)

Decided July 30, 1973.

Taussig, McCarthy & Snyder, P.C., John Taussig, John Whitehouse Cobb, for plaintiff-appellant.

John P. Moore, Attorney General, John E. Bush, Deputy, John P. Holloway, Assistant, George D. Dikeou, Assistant, for defendant-appellees.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

Plaintiff-Appellant Clarke Reed Watson (hereinafter referred to as plaintiff) applied for admission to the University of Colorado. His application was reviewed by the University's Special Admissions Committee and was denied, apparently for the reason that the plaintiff had a prior criminal record. The plaintiff applied for reconsideration of his application

and, upon reconsideration, it was again denied. Subsequently, the plaintiff and another went to the home of a member of the Special Admissions Committee, Dean William Douglas. The plaintiff told Dean Douglas that he believed the decision not to admit was a personal decision by Dean Douglas and that he (plaintiff) could not thereafter be responsible for Dean Douglas' personal safety. Dean Douglas, apparently feeling intimidated and fearing for his personal safety, left town for two days.

Upon learning of the incident between the plaintiff and Dean Douglas, Dr. Frederick Thieme, President of the University of Colorado, sent a letter to the plaintiff reading, *inter alia,* as follows:

"It has come to my attention that you applied for readmission to the University on March 15, 1972. Because your application indicated that you had been convicted of a felony, the matter was referred to the Special Committee on Admissions and on March 20, 1972, you were advised by William A. Douglas, Dean of the Office of Admissions and Records, on behalf of the Special Committee, that your application for readmission was denied. I am informed that the Committee carefully examined your overall credentials and determined that your pattern of behavior was not such as to warrant admission at this time.

"You subsequently asked the Special Admissions Committee to reconsider, indicating that you did not believe that your criminal activities were an appropriate subject for consideration. Your request for review was again considered by the Committee and by letter dated April 6, 1972, your request was denied at which time you were furnished with admissions criteria which appears in all of the University catalogues and has been a part of University admissions criteria since its inception.

"Subsequently, on Saturday, April 8, having apparently received the Committee's letter of April 6, you appeared at Mr. Douglas's home, in the company of another person, and engaged in threatening behavior stating that you considered the denial of readmission to be a personal decision of Mr.

Douglas. This, of course, is not true. The decision not to readmit you was a decision of the University of Colorado, acting through its Special Admissions Committee, applying published admissions criteria duly approved and adopted by the Board of Regents.

"On the following day, namely, Sunday, April 9, in the company of several persons, you again went to Mr. Douglas's home. Although you did not seek to gain admission, your presence, under the circumstances here involved, was calculated to harass or intimidate. Upon apprehension, I am advised that you have been charged by the City of Boulder with assault relating to the Saturday incident under appropriate municipal ordinances.

"Based upon the above, it is my determination that your physical presence upon the campus of the University is detrimental to the well being of the University, its students and staff, and incompatible with the University's function as an educational institution. Accordingly, acting in my capacity as chief executive officer of the University, I direct that you refrain from entering upon the campus of the University of Colorado, all buildings located thereon, and any other property owned or possessed by the University. Your failure to comply with this directive will result in the University using every available legal means to have you arrested and removed as a trespasser and, if necessary, restrained from entering upon University properties."

This letter implicitly constituted a permanent exclusion of the plaintiff from all University property including not only the entire Boulder campus, but also the University Medical Center in Denver and the University's Colorado Springs and Denver campuses. The plaintiff was afforded no opportunity, prior to President Thieme's "denial of access" letter, for a hearing in which to challenge the various allegations on which his exclusion was based.

Following receipt of President Thieme's letter, the plaintiff went to the University Memorial Center, located on the Boulder campus, for the purpose of continuing certain tasks in which he was engaged with the Black Student Alliance, a

University-recognized student association. While on the campus, the plaintiff was cited for trespass under a Boulder municipal ordinance. He subsequently instituted this suit for declaratory and injunctive relief, alleging a violation of various rights afforded him by the First and Fourteenth Amendments to the United States Constitution. The trial court denied relief. We reverse.

I.

Colo. Const. art. IX, § 14 vests in the Board of Regents general supervisory power over the University of Colorado. Pursuant to this power, the Regents adopted the following regulation:

"The University, acting through its administrative officers, reserves the right to exclude those deemed detrimental to its well-being or incompatible with its function as an educational institution."

The authority of President Thieme to exclude the plaintiff from the University's campuses was based on the above regulation. Plaintiff alleges that the regulation is unconstitutionally vague under the "due process" clause of the Fourteenth Amendment to the United States Constitution. The initial question is whether that clause applies to the University regulation.

Evidence introduced at the court hearing indicated that the various campuses (Boulder, Denver and Colorado Springs) of the University of Colorado are open to all members of the general public, with the exception of the Computer Center, research laboratories and other highly specialized facilities, and private offices.

Further, the evidence indicated that the plaintiff had a substantial, albeit unofficial, connection with the University. He was a consultant to the Black Student's Alliance, a co-instructor in a course offered by the University, and the Vice-President and General Manager of the Colorado Cooperative Council (an organization which provided low-cost housing for students off-campus). Additionally, the plaintiff had arranged to do consultant work with the University's College of Environmental Design. Finally, there was uncon-

tradicted evidence at trial that the plaintiff's ability to carry on these various activities would be seriously jeopardized if he was denied access to the University campuses.

■ We recently recognized that many University-sponsored functions held outside University classrooms, are of educational benefit not only to students enrolled at the University, but also to attending members of the public-at-large. *Boulder v. Regents,* 179 Colo. 420, 501 P.2d 123 (1972). We need not and cannot close our eyes to the fact that a University campus is oftentimes a focal point for the discussion of public questions, cultural events, recreational activities, and general educative functions. The University of Colorado opened its doors to the public. Accordingly, on this basis, we hold that a non-student's right to access to University functions and facilities, which are open to the public-at-large, cannot be permanently denied without due process of law under the Fourteenth Amendment to the United States Constitution.

■ The due process clause, in part, requires that a regulation not be "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). *See Memorial Trusts v. Beery,* 144 Colo. 448, 356 P.2d 884 (1960). Although the language of the regulation at issue here is broad, we believe the clear intent of the regulation is to protect the University against persons whose activities disrupt the functioning of the University as an educational institution. As so interpreted, we do not view the regulation to be impermissibly vague. *See Dunkel v. Elkins,* 325 F. Supp. 1235 (D. Maryland 1971).

## II.

■ The plaintiff urges that the University's exclusion order was void because it issued without procedural due process, *i.e.,* a hearing was not afforded plaintiff prior to his exclusion from University property. We agree. Where students have been subjected to disciplinary action by University officials, courts have recognized that procedural due process requires — prior to imposition of the disciplinary

action — adequate notice of the charges, reasonable opportunity to prepare to meet the charges, an orderly administrative hearing adapted to the nature of the case, and a fair and impartial decision. *See, e.g., Buttny v. Smiley,* 281 F. Supp. 280 (D. Colo. 1968). The same protections must be afforded non-students who may be permanently denied access to University functions and facilities. *See Dunkel v. Elkins, supra.*

▇ As part of a valid Regent's regulation of this type, in addition to providing for a hearing, there should be a provision for the person or persons who will act as adjudicator(s).

▇ In the present posture of this matter we should not attempt to "spell out" all proper elements of such a regulation. This task should be undertaken first by the Regents. We should say, however, that when a genuine emergency appears to exist and it is impractical for University officials to grant a prior hearing, the right of non-students to access to the University may be suspended without a prior hearing, so long as a hearing is thereafter provided with reasonable promptness. *Dunkel v. Elkins, supra.*

### III.

Our decision requires a remand of this case to the district court. This being so, we deem it unnecessary to decide and do not decide other constitutional issues raised in this appeal. Additionally, we give no indication as to whether the alleged conduct of the plaintiff would justify his exclusion from the University under the regulation as interpreted herein.

The judgment is reversed and the cause remanded to the district court with directions to enter a judgment consonant with the views herein expressed.

MR JUSTICE ERICKSON does not participate.