354 S.E.2d 616

**CITY OF MORGANTOWN**

v.

**WEST VIRGINIA BOARD OF REGENTS.**

No. 17313.

Supreme Court of Appeals of West Virginia.

Feb. 27, 1987.

Mike Magro, Jr., Morgantown, for appellant.

Jeffrey W. VanGilder, Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

The City of Morgantown filed a declaratory judgment action in the Circuit Court of Kanawha County in July, 1985, asking whether the Board of Regents was required to collect the City's two-percent amusement tax on the sale of tickets to entertainment events such as carnivals, basketball and football games, and big time entertainers, which are open to the general public. Judge Canady of the Circuit Court of Kanawha County granted summary judgment to the Board of Regents, from which the City now appeals. We agree with the circuit court that the events sought to be taxed are not conducted for private profit, and therefore affirm.

The legislature granted cities the power to levy amusement taxes in W.Va. Code § 8-13-6 (1984). It reads, in pertinent part:

> Every municipality shall have plenary power and authority to levy and collect an admission or amusement tax upon any public amusement or entertainment conducted within the corporate limits thereof *for private profit or gain.* The tax shall be levied upon the purchaser and added to and collected by the seller with the price of admission, or other charge for the amusement or entertainment. The tax shall not exceed two percent of the admission price or charge, but a tax of one cent may be levied and collected in any case.

(emphasis added). In order to uphold the summary judgment, we must find that there is no genuine issue of material fact as to whether sports and entertainment events sponsored by West Virginia University are conducted "for private profit or gain."

The City of Morgantown relies to a large extent on depositions taken of various University employees that indicate that the West Virginia University Department of Intercollegiate Athletics is a separate, self-supporting unit and that money generated by sports activities does not go directly to the support of the academic function of the University. The City also points out that these receipts do not go into the general revenue fund, but are sequestered in special revenue accounts, and that the State collects consumers sales tax on them. The Board of Regents counters that there is no "private" party that stands to gain from profits generated by West Virginia University's athletic or entertainment events; that the legislature and this Court have recognized that West Virginia University exercises a governmental (as opposed to private) function when it sponsors athletic contests, and that special revenue funds

are nonetheless State funds. Further, the Board of Regents asserts that imposition of the sales tax on certain state activities is expressly authorized by W.Va. Code § 11–15–2(7), and that such authorization does not convert a public function to private status.

The appellant cites two cases that have sustained taxes on football ticket receipts. The first is *Allen v. Regents of Univ. Sys. of Ga.*, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448 (1938), in which the United States Supreme Court sustained a federal ten percent admissions tax on tickets to University of Georgia and Georgia Tech football games. That case focused on whether the federal exaction would unconstitutionally burden a governmental activity of the state. The Court assumed that public education was a governmental function, and that athletic contests were an integral part of the program of public education conducted by the State of Georgia. 304 U.S. at 449, 58 S.Ct. at 984. It concluded that the State of Georgia was conducting a business "having the incidents of similar enterprises usually prosecuted for private gain," and that even if education was an essential governmental function, funds generated by conducting a business enterprise were nonetheless subject to federal taxation. 340 U.S. at 452, 58 S.Ct. at 985. This case supports the City of Morgantown's argument to the extent that it finds that two universities were conducting a business enterprise "for gain" in the form of their athletic programs. It also compares such programs to "enterprises usually prosecuted for private gain." It does not, however, hold that the football games sponsored by Georgia universities were *conducted* "for private profit or gain." It does not, therefore, compel us to accept the City of Morgantown's position.

The second case is *City of Boulder v. Regents of the Univ. of Colo.*, 179 Colo. 420, 501 P.2d 123 (1972). There the City of Boulder sought a declaratory judgment regarding the validity of its admissions tax on charges made to attend public events sponsored by the University of Colorado. The Supreme Court of Colorado held that the City's ordinance was valid as applied to university football games, but invalid as applied to university lectures, dissertations, art exhibitions, concerts, and dramatic performances.[1] The statute in the Colorado case, however, imposed a tax on "admission to any place or event in the city that is open to the public," 501 P.2d at 124, and made no reference to "private profit or gain." Thus the Colorado case, like the *Allen* case, did not address the issue before us.

■ Proceeds from athletic and entertainment events sponsored by West Virginia University are state funds held in special revenue accounts under W.Va.Code § 12–2–2 (1985). Special revenue accounts are state accounts kept separate from the general revenue due to a legislative determination that money generated by a particular activity should be allocated to a specific purpose. Such accounting does not remove the funds from the state treasury or destroy the public accountability of those who spend them.

■ This Court has held that admission fees collected by state educational institutions at athletic events are "public moneys." *City of Morgantown v. Ducker*, 153 W.Va. 121, 126, 168 S.E.2d 298, 301 (1969); syl. pt. 1, *State ex rel. Bd. of Govs. v. Sims*, 134 W.Va. 428, 59 S.E.2d 705 (1950). Similarly, we have observed that athletic programs are a proper and integral part of the education provided by state universities. *See, e.g., Glover v. Sims*, 121 W.Va. 407, 411–12, 3 S.E.2d 612, 614 (1939). We believe that the same is true of entertainment events such as concerts, lectures, exhibits, dramatic performances, and similar functions, the profits from which accrue to the benefit of a public university.

■ The City of Morgantown asks us to hold that such public moneys are collected for private profit or gain. The word "private" means "intended for or restricted to

1. 179 Colo. at 426–27, 501 P.2d at 126–27. The court went on to hold, however, that the City of Boulder could not force a state institution to collect such a tax. 179 Colo. at 425, 501 P.2d at 126.

the use of a particular person or group or class of persons: not freely available to the public ... belonging to or concerning an individual person, company, or interest." *Webster's Third New International Dictionary* 1804–05 (1966).[2] There is no individual person, company, or interest that stands to profit from university-sponsored events, and the profits therefrom are not "private."

In a case construing the term "private gain," Washington, D.C., had a statute providing that property used for educational purposes that was not used for private gain was exempt from taxation, and all other property used for educational purposes was to be taxed as any other property. The court in *District of Columbia v. Mt. Vernon Seminary*, 100 F.2d 116 (D.C.Cir. 1938), held that the seminary was not taxable under the statute even though operation of the school resulted in a profit. The court held:

> The term "private gain," as used in the statute, has reference only to gain realized by any individual or stockholder who has a pecuniary interest in the corporation and not ... to profits realized by the institution but turned back into the treasury or expended for permanent improvements....
>
> If it had been intended to tax institutions earning a profit, i.e., having income in excess of expenditures, Congress would have used the word *profit* or the word *gain* instead of *private gain.*

100 F.2d at 118. The same is true in this case.

 For the reasons discussed, we conclude that sports and entertainment events sponsored by West Virginia University are not conducted for private profit or gain, and are not subject to the amusement tax levied by the City of Morgantown.[3] We find no genuine issue of material fact in this regard, and no error in the circuit court's application of the law. We therefore affirm the grant of summary judgment.

Affirmed.

---

2. For other definitions, see 60 Ops. Att'y Gen. 59 (Mar. 23, 1983).

3. We find little merit in the City's reliance on the fact that the State of West Virginia collects consumers sales tax on non-student tickets to athletic events. The consumers sales tax is no-

where restricted to activities conducted for private profit or gain. *See* W.Va.Code §§ 11–19–3; 11–15–2(7) (1983). The ability of the state to impose a tax does not therefore have any bearing on the scope of the authority granted to municipalities in W.Va.Code § 8–13–6 (1984).