364 S.E.2d 25 (1987)
STATE of West Virginia ex rel. A. James MANCHIN, as Treasurer of the State of West Virginia
v.
The WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION and William Hanlin, as Executive Secretary of the West Virginia Secondary School Activities Commission.
No. 17916.
Supreme Court of Appeals of West Virginia.
December 10, 1987.
Charles G. Brown, Atty. Gen., Daniel W. Vannoy, Asst. Atty. Gen., for petitioner.
William R. Wooton, Wooton, Wooton & Fragile, Beckley, for respondents.
McHUGH, Justice:
In this mandamus proceeding the petitioner, the State of West Virginia, on the relation of A. James Manchin, as Treasurer of the State of West Virginia ("the relator"), seeks a peremptory writ of mandamus compelling the respondents, the West Virginia Secondary School Activities Commission ("the SSAC") and its executive secretary, William Hanlin, to transfer immediately all existing funds of the SSAC into an account of the relator and to deposit all future receipts into an account of the relator within twenty-four hours after receipt. After reviewing the petition, the response and the memorandum and supplemental memorandum in support of the response, and after hearing argument of counsel, we conclude that the requested writ should be denied.

*26 I
The West Virginia Secondary School Activities Commission ("the SSAC") has been in existence since 1916. Its members are principals (or their representatives) of secondary schools (essentially junior and senior high schools) in those counties which, through their county board of education, have elected to delegate control of their interscholastic athletic events and band activities to the SSAC. Parochial and private schools may also delegate to the SSAC the control of these types of extracurricular activities.[1]
The administrative regulations of the SSAC, approved by the State Board of Education, indicate the following. The executive secretary of the SSAC, subject to review by a Board of Appeals, interprets and enforces the SSAC's regulations pertaining to the interscholastic athletic events and band activities of the member schools.[2] The decisions of the Board of Appeals of the SSAC are, in turn, subject to review by the Review Board of the SSAC.[3] The decisions of the Review Board are final.
The Board of Appeals of the SSAC appoints five secondary school principals to serve as members of the Board of Trustees of the SSAC. The Trustees hold title to all real estate and other property owned by the SSAC. If it so elects, the SSAC's Board of Control (the entire membership of secondary school principals) may direct the Trustees to incorporate the SSAC. The State Board of Education must approve the decision to incorporate.
From its inception in 1916 until January, 1967, the SSAC was an unincorporated association. From January, 1967 until voluntary dissolution in December, 1969, it was a corporation with the name of the West Virginia Secondary School Activities Commission, Inc. Upon dissolution of the corporation the SSAC reverted to its status as an unincorporated association.[4]
Funds of the SSAC are generated in essentially two ways: (1) receipt of dues of member schools and (2) receipt of entry fees and assessments for conducting interscholastic athletic events or band activities. The executive secretary of the SSAC acts as its treasurer and expends its funds upon order of the president of the SSAC. According to a newspaper article attached as an exhibit to the petition in this proceeding, the SSAC currently maintains about $350,000.00 in a bank account of unspecified type in the name of the SSAC. According to the same exhibit, the SSAC recently deposited about $500,000.00 in the state consolidated investment fund.

II
At the outset we emphasize that the only issue raised and briefed in this case is whether the moneys of the SSAC must be received for deposit in the state treasury as *27 "moneys due the State" under W.Va.Code, 12-2-2 [1983].[5] There are other more troubling issues that are not before us, such as whether the legislature may authorize county boards of education to delegate supervision of certain activities to a commission such as the SSAC or, if so, the permissible extent of such delegation.
The relator contends that the funds of the SSAC must be deposited in the state treasury within twenty-four hours after receipt thereof, pursuant to W.Va.Code, 12-2-2 [1983]. The relator relies upon his assertion that the SSAC is a state agency whose funds are consequently "moneys due the State" under that statutory provision. In support of that assertion the relator cites two opinions of the West Virginia Attorney General's office, one of which opines that the SSAC is a public employer for purposes of the West Virginia Public Employees Retirement Act, W.Va.Code, 5-10-1 to 5-10-52, as amended, and one of which opines that the SSAC is a state agency whose state funds may be made available for investment in the consolidated fund, pursuant to the Investment Management Law, W.Va. Code, 12-6-1 to 12-6-17, as amended.[6]
The respondents argue that the SSAC is a voluntary association of high school principals, not a state agency. They also argue that the SSAC's participation in the public employees' retirement system and in the consolidated investment fund has no bearing on this case because such participation is governed by particular statutory definitions not applicable here. Finally, the respondents argue that, even if the SSAC is a state agency, its funds are still not "moneys due the State" because the legislature has designated such funds as "quasi-public funds" subject to audit by the State Tax Commissioner as chief inspector of local governmental entities, not by the legislative auditor, who audits state spending units.
In March, 1967, W.Va.Code, 18-2-25 was enacted.[7] Under it, the county boards of education were expressly granted authority *28 to control interscholastic athletic events and other extracurricular activities.[8] Also under this statute, the county boards of education were expressly granted the authority to delegate control of interscholastic athletic events and band activities to the West Virginia Secondary School Activities Commission, "which is hereby established."[9] This statute also provides that "all moneys paid to such commission, as well as moneys derived from any contest or other event sponsored by said commission, shall be quasi-public funds" as the same are defined in W.Va.Code, 18-5-13, as amended. "Quasi-public funds" are there defined as "any money received by any principal, teacher, student or other person for the benefit of the school system as a result of curricular or noncurricular activities."[10]
By its reference in W.Va.Code, 18-2-25 [1967] to W.Va.Code, 18-5-13 [1987], the legislature has deemed the SSAC's funds to be similar in nature to those of county boards of education. W.Va.Code, 18-5-13 [1987] provides for the authority of county boards of education. Among the powers conferred upon the county boards of education under W.Va.Code, 18-5-13 [1987] is the power to control the receipts and disbursements of funds generated by any activities or other endeavors of or in the name of county schools or carried on by any body or organization directly connected with such schools:
The [county] boards [of education], subject to the provisions of this chapter and the rules and regulations of the state board [of education], shall have authority:
(1) To control and manage all of the schools and school interests for all school activities and upon all school property, whether owned or leased by the county, including the authority to require that records be kept of all receipts and disbursements of all funds collected or received by any principal, teacher, student or other person in connection therewith, any programs, activities or other endeavors of any nature operated or carried on by or in the name of the school, or any organization or body directly connected with the school, to audit such records and to conserve such funds, which shall be deemed quasi-public moneys, including securing surety bonds by expenditure of board moneys[.]
(emphases added) "Quasi-public funds" of a county board of education are to be deposited along with levy moneys and other school moneys in a bank account or accounts in a depository, or banks, within the county. See W.Va.Code, 18-9-6 [1987]. The legislature has not explicitly identified the appropriate type of depository for the "quasi-public funds" of the SSAC. However, by its incorporation into W.Va.Code, 18-2-25 [1967] of the definition of "quasi-public funds" contained in W.Va.Code, 18-5-13 [1987], the legislature has obviously *29 analogized the SSAC's funds to the "quasi-public funds" of a county board of education, as opposed to state funds.
That "quasi-public funds" are not "moneys due the State" is indicated by the fact that the term "quasi-public funds" is utilized by the legislature only when referring to certain funds of county boards of education or to the funds of the SSAC. That "quasi-public funds" are not "moneys due the State" is indicated also by the fact that the term "quasi-public funds" is nowhere mentioned in W.Va.Code, 12-2-2 [1983]. It is also significant that W.Va.Code, 12-2-2 [1983], which provides for separate accounts in the state treasury for several types of state agency funds, does not mention the funds of the SSAC, but does include the funds collected at state educational institutions for student activities. See W.Va.Code, 12-2-2(d) [1983].
It is clear, therefore, that moneys of the SSAC have been classified by the legislature as "quasi-public funds," not state funds. See supra note 10. Like the funds of a parent/teacher organization, or of a county board of education or county commission, and subject to similar accountability, the funds of the SSAC are not "moneys due the State," as set forth by the legislature in W.Va.Code, 12-2-2 [1983]. This conclusion is also indicated by the fact that the State Tax Commissioner, as chief inspector of local governmental entities,[11] and not the legislative auditor, who audits state spending units,[12] is designated by W.Va.Code, 18-2-25 [1967] to audit the SSAC's records.
In syllabus point 1 of State ex rel. Board of Governors v. Sims, 134 W.Va. 428, 59 S.E.2d 705 (1950), the Court held that moneys derived and dedicated under a specific Act of the legislature "by state educational institutions from admission fees to athletic contests, and from contracts for student athletic teams of state educational institutions to contest with other athletic teams inside and outside the State are [state] public moneys within the meaning of Subsection (d) and Subsection (j) of Code, 12-2-2, as amended...." (emphases added) (involving intercollegiate athletics). Accord, City of Morgantown v. West Virginia Board of Regents, ___ W.Va. ___, ___, 354 S.E.2d 616, 618 (1987). W.Va.Code, 12-2-2(d), as amended, provides for a separate account in the state treasury for "[a]ll fees and funds collected at state educational institutions for student activities[.]" (emphasis added) W.Va.Code, 12-2-2(j), as amended, provides for a separate account in the state treasury for "[a]ll moneys collected or received under any act of the legislature providing that funds collected or received thereunder shall be used for specific purposes."
Obviously, neither one of these statutory provisions applies to the moneys derived by the SSAC from any contest or other event sponsored by the SSAC for the particular county secondary school(s).
State ex rel. Board of Governors v. Sims is cited in City of Morgantown v. Ducker, 153 W.Va. 121, 168 S.E.2d 298 (1969), in support of the proposition that moneys received by the predecessor to the West Virginia Board of Regents, including admission fees to intercollegiate athletic contests, are state moneys which, under W.Va.Code, 12-2-2, as amended, must be deposited in the state treasury. Id. at 126, 168 S.E.2d at 301. This "state moneys" proposition was utilized in holding the predecessor to the West Virginia Board of Regents to be a state agency entitled to state constitutional immunity from suit. The Court in reaching that holding recognized that the predecessor to the Board of Regents was entirely dependent upon the legislature for its financial support. Id. at 125-26, 168 S.E.2d at 301.
Here, in contrast, the SSAC is not "entirely dependent upon the legislature for its financial support," but, rather, is dependent upon dues from county schools (funded principally by county property taxes) and from entry fees for interscholastic athletic events and interscholastic band activities.
*30 Accordingly, this Court holds that funds received by the West Virginia Secondary School Activities Commission, which Commission operates pursuant to authority granted it by county boards of education under W.Va.Code, 18-2-25 [1967], are "quasi-public funds" as defined in W.Va. Code, 18-5-13 [1987], and are to be accounted for in a manner similar to that provided for funds of county boards of education, but such funds are not to be accounted for under W.Va.Code, 12-2-2 [1983] as "moneys due the State."
Our holding in this case is limited to the narrow question of whether the SSAC's funds are "moneys due the State" under W.Va.Code, 12-2-2 [1983]. An entity such as a high school or secondary school athletic or activities commission or association may be a state entity, under particular statutory definitions, for certain purposes and not be a state entity for other purposes. See Spain v. Louisiana High School Athletic Association, 398 So.2d 1386, 1390-91 & n. 4 (La.1981).
As to the particular question presented here, we believe that the legislature has provided the answer by its classification of the moneys and by its method of accountability for such moneys. By the holding in this opinion, however, this Court does not impliedly condone the oversight of any part of the educational process by any private entity. As previously noted, there are other issues, with state constitutional implications, that are not presented here.
The Court, in syllabus point 2 of State ex rel. Kucera v. City of Wheeling, 153 W.Va. 538, 170 S.E.2d 367 (1969), set forth three elements for entitlement to relief in mandamus:
A writ of mandamus will not issue unless three elements coexist(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.
Accord, syl., Meade v. Mingo County Board of Education, ___ W.Va. ___, 356 S.E.2d 479 (1987); syl. pt. 1, State ex rel. Morgan v. Miller, ___ W.Va. ___, 350 S.E. 2d 724 (1986); syl. pt. 2, United Mine Workers v. Faerber, No. 17076 (W.Va. July 10, 1986) (collecting cases, slip op. at 11); Boyd v. Merritt, ___ W.Va. ___, ___, 354 S.E.2d 106, 110 (1986); syl. pt. 1, Rogers v. Hechler, ___ W.Va. ___, 348 S.E.2d 299 (1986).
In the present case the relator has failed to show the first two elements necessary for mandamus relief. Accordingly, the peremptory writ of mandamus is denied.
Writ denied.
NOTES
[1] Due to our disposition of this case on the basis that the moneys of the SSAC are not "moneys due the State," it is not necessary to address the questions raised by the respondents in their brief relating to the constitutional implications of applying the SSAC's regulations to parochial schools.
[2] Five elected officers, all of whom are secondary school principals, together with three appointed persons, constitute the Board of Appeals of the SSAC. The State Superintendent of Schools or his or her representative; a person selected by the West Virginia School Boards Association; and a person selected by the West Virginia School Administrators Association are the three appointed members of the Board of Appeals. The Board of Appeals is authorized to appoint an executive secretary and other full-time staff personnel.
[3] The Review Board consists of seven members appointed by the State Board of Education upon recommendation by the State Superintendent of Schools. The persons appointed to the Review Board are normally selected from names submitted by various associations, such as the West Virginia School Administrators Association, the West Virginia Athletic Directors Association, the West Virginia Sportswriters Association, the West Virginia Bar Association, the West Virginia State Medical Association and others.
[4] In their supplemental memorandum the respondents indicate that, after this case was argued before us, they sought the consent of the State Board of Education to incorporate as a nonstock, nonprofit corporation. The tentative decision to incorporate, again, was intended, inter alia, to provide limited liability to the individual members of the SSAC. This tentative decision to incorporate has no bearing on this case.
[5] W.Va.Code, 12-2-2 [1983] provides in pertinent part:

All officials and employees of the State authorized by statute to accept moneys due the State of West Virginia shall keep a daily itemized record of such moneys so received for deposit in the state treasury and shall deposit within twenty-four hours with the state treasurer all moneys received or collected by them for or on behalf of the State for any purpose whatsoever.
[6] The questions presented and discussed in these two opinions of the West Virginia Attorney General's office need not be addressed in this case. We express no opinion on the validity of these two opinions.
[7] The pertinent portion of W.Va.Code, 18-2-25 [1967] states as follows:

The county boards of education are hereby granted and shall exercise the control, supervision and regulation of all interscholastic athletic events, and other extracurricular activities of the students in public secondary schools, and of said schools of their respective counties. The county board of education may delegate such control, supervision and regulation of interscholastic athletic events and band activities to the `West Virginia secondary school activities commission,' which is hereby established.
The West Virginia secondary school activities commission shall be composed of the principals, or their representatives, of those secondary schools whose county boards of education have certified in writing to the state superintendent of schools that they have elected to delegate the control, supervision and regulation of their interscholastic athletic events and band activities of the students in the public secondary schools in their respective counties to said commission. The West Virginia secondary school activities commission is hereby empowered to exercise the control, supervision and regulation of interscholastic athletic events and band activities of secondary schools, delegated to it pursuant to this section.... The West Virginia secondary school activities commission, may, with the consent of the state board of education, incorporate under the name of `West Virginia Secondary School Activities Commission, Inc.,' as a nonprofit, nonstock corporation under the provisions of chapter thirty-one of this Code. County boards of education are hereby authorized to expend moneys for and pay dues to the West Virginia secondary school activities commission, and all moneys paid to such commission, as well as moneys derived from any contest or other event sponsored by said commission, shall be quasi-public funds as the same are defined in article five, chapter eighteen, and such funds of the commission shall be subject to an annual audit by the state tax commissioner.
(emphasis added)
[8] In Bailey v. Truby, ___ W.Va. ___, 321 S.E.2d 302 (1984), this Court recognized that policies as to extracurricular activities and academic matters are not the exclusive province of either the State Board of Education or the county boards of education. The State Board of Education exercises general supervision and sets minimum standards, but the county boards of education "flesh out" the details and may set higher standards of academic and extracurricular excellence than those set by the State Board of Education. Id. at ___, 321 S.E.2d at 318-19.
[9] The Court, in State ex rel. West Virginia Secondary School Activities Commission v. Oakley, 152 W.Va. 533, 164 S.E.2d 775 (1968), noted that the incorporation of the SSAC (for a brief period of time) was accomplished by formation under the general corporation law, not by the "hereby established" language of W.Va.Code, 18-2-25 [1967]. The SSAC was already established as a corporation when that statute was enacted. Therefore, the statute only accorded statutory recognition to the preexistent organization. Id. at 535, 537, 164 S.E.2d at 777, 778. In that case the Court held that a circuit court lacked jurisdiction to consider an appeal of a decision of the SSAC's Review Board. The judicial review provisions of the State Administrative Procedures Act were ruled inapplicable. Implicit in this ruling is a determination that the SSAC was not a state agency.
[10] The legislature's use of the term "quasi-public funds" may be misleading. It suggests something less than "public funds." See Black's Law Dictionary 1120 (5th ed. 1979). Our use of this term is not to be construed as authorizing the collection and expenditure of funds without proper governmental control and accountability.
[11] W.Va.Code, 6-9-1 [1931]; W.Va.Code, 6-9-7(a) [1982].
[12] W.Va.Code, 4-2-2 [1961]; W.Va.Code, 4-2-4 [1961].