[No. 26421. Department Two. August 9, 1937.]

THE FEDERAL LAND BANK OF SPOKANE, *Respondent,* v. LOUIS STATELEN *et al., Defendants,* CHARLES H. WOLFE *et al., Appellants.*[1]

[1]Reported in 70 P. (2d) 1053.

L. H. *Wheeler* and Leo W. *Stewart,* for appellants.

*William Healy, Dana E. Brinck, H. R. Newton,* and R. L. *Bartling,* for respondent.

ROBINSON, J.—This is a mortgage foreclosure in which the appellants Robinwood Beach Properties, Inc., and Charles H. Wolfe were made parties defendant as claiming "some right, title, lien or interest" in the property sought to be foreclosed "subsequent and junior to the right and lien of the plaintiff."

By demurrer, answer, and objection to the admission of any evidence, appellants, as defendants in the court below, questioned the right of the respondent to maintain the suit, upon the ground that respondent had not paid the corporate license fees required by law, and contended, at every opportunity and by every method available, that the doing of business within the state by a Federal land bank without paying license fees constitutes "an invasion of the domain and sovereignty of the state of Washington," and is in violation of its constitution, particularly §§ 12, 29, and 30 of Art. I, § 7 of Art. XII, and § 4 of Art. VII; and is also in violation of § 8 of Art. I and the tenth amendment to the constitution of the United States. The trial court consistently ruled against these contentions, and assignments that these rulings are erroneous present the major questions upon appeal.

It is provided by Rem. Rev. Stat. (Sup.), § 8370-161 [P. C. § 7030-221] (Laws 1935, p. 813, § 161), that

"every bank and corporation other than a national bank or national banking association" shall pay annual license fees to the state for the privilege of exercising its corporate franchise within its borders, and by Rem. Rev. Stat., § 3842 [P. C. § 4647], that no corporation shall maintain any suit without alleging and proving that it has paid its annual license fee. Wherefore, the appellants say that, since the respondent is neither a national bank nor a national banking association and has paid no license fee, it cannot maintain this action.

Section 7 of Art. XII of the state constitution is as follows:

"No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

The appellants argue that the respondent is a corporation organized outside the limits of this state; that it is in the mortgage business and, if not required to pay license fees, is doing business on more favorable conditions than domestic mortgage corporations, in violation of the above constitutional provision.

Section 4 of Art. VII of the state constitution is as follows:

"The power to tax corporations and corporate property shall not be surrendered or suspended by any contract or grant to which the state shall be a party."

If we understand the appellants' position, it is contended that, when the Federal government admitted the state of Washington to the Union, it had notice of the foregoing constitutional provision and, therefore, is in some way estopped from setting up a Federal corporation and providing that it may do business in this state free from state taxation.

As to the Federal constitution, the appellants' argument is that Congress is not given power, in § 8 of Art. I (in which section the powers of Congress are enumerated), to organize corporations to engage in the mortgage business throughout the states, free from state taxation, or, in fact, to organize corporations at all; and in this connection appellants invoke the tenth amendment, which is as follows:

"The powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

In answer to all these contentions, the respondent says that it is organized and exists under and by virtue of an act of Congress, originally enacted in 1916 (39 Stat. 362, 12 U. S. C. A. 671 *et seq.*), granting it power to make loans on mortgages throughout the United States (12 U. S. C. A. 723, 781); and that it is, by the terms of that act, wholly exempt from any kind of taxation, Federal, state, municipal or local, except taxes upon real estate held, purchased or taken by it under the provisions of the law (12 U. S. C. A. 931); and it invokes that portion of Art. VI of the constitution of the United States which reads as follows:

"This constitution, and the laws of the United States which shall be made in pursuance thereof, . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

It is therefore plain that the existence of conflicts between the act of Congress providing for the creation of Federal land banks and our own constitution or statutes is wholly immaterial, *if* the act of Congress establishing Federal land banks and defining their powers and immunities was "made in pursuance" of the Federal constitution.

That the act is constitutional, is so firmly settled that, in dealing with the matter, we shall confine ourselves wholly to citation of authority. That Congress may establish banks for national purposes, only a small part of the capital of which is held by the government and a majority of which is represented by shares of stock privately owned, was held as long ago as 1819, in the celebrated opinion by Chief Justice Marshall in *McCulloch v. Maryland,* 17 U. S. (4 Wheat.) 316, 4 L. Ed. 579, which was followed a year or two later by his almost equally well-known opinion in the case of *Osborn v. Bank of United States,* 22 U. S. (9 Wheat.) 738, 6 L. Ed. 204, holding that Federal instrumentalities are not subject to state taxation.

The universal acceptance of these principles is shown by the existence of national banks in every state of the Union. The act providing for their establishment was declared constitutional in 1875 in the case of *Farmers' and Mechanics' Nat. Bank of Buffalo v. Dearing,* 91 U. S. 29, 23 L. Ed. 196, and it was held in *Owensboro Nat. Bank v. Owensboro,* 173 U. S. 664, 19 S. Ct. 537, 43 L. Ed. 850, that a state is without power to tax national banks except under the permissive legislation of Congress.

We may note in passing that it has been expressly held by this court that Rem. Rev. Stat., § 3842 [P. C. § 4163], providing that no corporation shall be permitted to commence or maintain any suit without alleging and proving that it has paid its last annual license fee, does not apply to national banks. *First Nat. Bank of Tonasket v. Slagle,* 165 Wash. 435, 5 P. (2d) 1013.

The act providing for the creation of national Federal land banks was held constitutional upon the authority of *McCulloch v. Maryland* and *Osborn v. Bank of United States, supra,* and intervening cases, in *Smith*

*v. Kansas City Title & Trust Co.,* 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577, and for the same reasons that the act providing for the creation of national banks was held constitutional in *Farmers' and Mechanics' Nat. Bank v. Dearing, supra.* Their complete freedom from state taxation was held in *Federal Land Bank of New Orleans v. Crosland,* 261 U. S. 374, 43 S. Ct. 385, 67 L. Ed. 703, 29 A. L. R. 1. Their freedom from any and all state control which might directly interfere with their functions has been firmly established in such cases as *Federal Land Bank of Columbia v. Gaines,* 290 U. S. 247, 54 S. Ct. 168, 78 L. Ed. 299, and *Federal Land Bank of St. Louis v. Priddy,* 295 U. S. 229, 55 S. Ct. 705, 79 L. Ed. 1408, and it has been held by the supreme court of the United States, since the case at bar was argued in this court, that national farm loan associations are also instrumentalities of the Federal government. *Knox Nat. Farm Loan Assn. v. Phillips,* 300 U. S. 194.

No error was committed by the trial court in ruling upon the constitutional questions raised by the appellants.

There are several minor assignments of error. It is alleged that the court erred (1) in admitting oral evidence of corporate existence; (2) admitting the mortgage; (3) admitting the note; and (4) admitting the tax receipts.

Corporate existence may be proved by parol evidence. *Pacific Drug Co. v. Hamilton,* 71 Wash. 469, 128 Pac. 1069. The certificate of acknowledgment attached to the mortgage was sufficient to prove *prima facie* the execution of the mortgage, *Howard v. Gemming,* 10 Wash. 30, 38 Pac. 766, and the recitals of the mortgage were sufficient to prove *prima facie* the execution of the note which the mortgage described secured. *Gibson v. Rea,* 92 Kan. 262, 140 Pac. 893. Besides, in this case, a handwriting expert testified that

the signature on the note introduced was the signature of the person who executed the mortgage.

It is urged that it was error to admit the tax receipts in evidence because they had not been recorded. This contention is based upon chapter 171, Laws of 1933, p. 652, § 1 (Rem. Rev. Stat. (Sup.), § 11263-1). The respondent held the first mortgage. Its payment of the taxes created a lien in its favor, and it had the right to establish that fact by introducing the receipts in evidence. That the appellants' rights were in no way prejudiced, is shown by the proviso, to wit:

"That in the event the above provision [requiring recording of receipts] be not complied with, the lien created by any such payment shall be subordinate to the liens of all mortgages or encumbrances upon such real property, which are senior to the mortgage or other lien of the person so making such payment."

The record shows the mortgage held by Robinwood Beach Properties, Inc., is junior to that of the respondent.

The judgment and decree from which this appeal was taken is affirmed.

STEINERT, C. J., HOLCOMB, TOLMAN, and MILLARD, JJ., concur.