BANK OF AMERICA, NATIONAL TRUST & SAVINGS ASS'N v. LIMA.

Civ. No. 50–932.

United States District Court
D. Massachusetts.

March 21, 1952.

Leonard E. Perry, New Bedford, Mass., for plaintiff.

Allan R. Rosenberg, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

In this action the plaintiff sues the defendant for an accounting. In its answer the defendant set up as a fourth defense an allegation that the plaintiff was doing business in the Commonwealth of Massachusetts but had failed to comply with Massachusetts General Laws Chapter 181 and was therefore precluded by Section 5 of that chapter from bringing suit in any court of this state. The plaintiff denies that Chapter 181 is applicable to it and denies the right of the legislature to enact any state legislation in conflict with the National Bank Act, 12 U.S.C.A. § 21 et seq. This latter view of unconstitutionality of the statute will be examined first. The question of the right of the state Legislature to enact legislation affecting this Federal Court is not raised.

National banks are creatures of the Federal Government. "National banks are brought into existence under federal legislation, are instrumentalities of the federal government and are necessarily subject to the paramount authority of the United States. Nevertheless, national banks are subject to the laws of a state in respect of their affairs, unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies, or conflict with the paramount law of the United States." First National Bank in St. Louis v. State of Missouri, 263 U.S. 640, 656, 44 S.Ct. 213, 215, 68 L.Ed. 486.

Chapter 181 of Massachusetts General Laws defines a foreign corporation as "a corporation, association or organization * * * which has been established, organized or chartered under laws other than those of the commonwealth." Section 1. This latter section is phrased in terms broad enough to cover a national bank and thus to make all the provisions of Chapter 181 applicable to it. The bank in question is a national bank and an instrument of the national government. Its presence in the

state is attributable to the national power, not to the state's permission. First National Bank in St. Louis v. State of Missouri, 263 U.S. 640, 666, 44 S.Ct. 213, 68 L.Ed. 486. It would therefore seem that any attempt by the state to block its entry until it complied with certain conditions would violate the constitution and laws of the United States. Neither states nor subdivisions thereof have the power to levy license fees on national banks, Second National Bank of Titusville, Pa. v. Caldwell and others, D.C., 13 F. 429; State v. Thomas Cruse Savings Bank, 21 Mont. 50, 52 P. 733, 45 L.R.A. 760; Austin v. City of Seattle, 176 Wash. 654, 30 P.2d 646, 93 A.L.R. 203; Bank of California v. City of Portland, 157 Or. 203, 69 P.2d 273, 115 A.L.R. 676; Bedford v. Colorado National Bank of Denver, 104 Colo. 311, 91 P.2d 469; City of Shelbyville v. Citizens Bank of Shelbyville, 272 Ky. 559, 114 S.W.2d 719. In the Caldwell case supra, the court said in effect that a license tax imposed by a city ordinance on a national bank being a tax on the operations of the bank and a direct obstruction to the exercise of its corporate powers is unconstitutional.

Section 5 of Chapter 181 of the General Laws is very plainly in conflict with 12 U.S.C.A. The last sentence reads in part, " * * * no action shall be maintained or recovery had in any of the courts of this commonwealth by any * * * foreign corporation so long as it fails to comply with said sections." Section 24 of 12 U.S.C.A. includes among the powers of national banks the power "to sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons." The effect of this provision is to place national banks in the same category as individuals in suits by and against them.

■ From the foregoing it would appear that if the provisions of Chapter 181 are held to include national banks within the scope of their coverage, then the effect of that statute is to place national banks on the same level as foreign corporations as regards capacity to sue. Such a result is plainly unconstitutional, since it conflicts with the federal statute empowering national banks to sue as fully as natural persons. But I do not feel that it is necessary to declare Chapter 181 unconstitutional in its application to national banks, for it is commonly accepted that in the absence of clear and unequivocal language to the effect, national banks are generally not held to come within state statutory requirements relating to foreign corporations unless the legislative intent to treat such institutions as foreign corporations is clearly manifested in unmistakable language. In Steward v. Atlantic National Bank of Boston, 9 Cir., 27 F.2d 224, 228, the court passing on this question stated, "in the absence of unmistakably clear language, it will not be found that the state has attempted to exercise a regulatory power over national agencies established in aid of governmental purposes." See also Federal Land Bank of Spokane v. Statelen, 191 Wash. 155, 70 P.2d 1053; First National Bank of Tonasket v. Slagle, 165 Wash. 435, 5 P.2d 1013.

I therefore conclude and rule from the foregoing that Chapter 181 would be unconstitutional if applicable to national banking corporations, but favoring the constitutionality of the state statute, I conclude and rule that as a matter of law Chapter 181 was not intended to apply to national banking institutions.

■ The other theory advanced in support of the fourth defense, that the bank was "doing business" within the commonwealth so as to make it subject to the provisions of Chapter 181, is equally untenable. Each case in which the question of doing business is raised must stand upon its own peculiar facts. Atlantic Nat. Bank v. Hupp Motor Car Corp., 298 Mass. 200, 10 N.E.2d 131. First, it is clear that the Legislature of Massachusetts did not intend that the registration provisions of Chapter 181 should apply to business done by foreign corporations in interstate commerce. See Thurman v. Chicago, Milwaukee & St. Paul R. Co., 254 Mass. 569, 573, 151 N.E. 63, 64, 46 A.L.R. 563, where the court says, "The defendant, being engaged exclusively in interstate commerce, so far as concerns its solicitation of business in this commonwealth, had a right to come here for that

solicitation without let or hindrance from this commonwealth.

" 'A corporation of one state may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of such commerce; and any statute of the latter state which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause.' " See also Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193.

The facts in the case show that the plaintiff had no office or telephone in Massachusetts, nor did it have any duly constituted representative permanently residing in this state. It is admitted that local business was transacted in this state in the sale of travelers' checks. But it does not necessarily follow that the issuing corporation did business in this state. In American Jurisprudence, Volume 23, § 376, p. 368, it is said, "Whether the local dealer's activities pursuant to * * * a contract, will be held to constitute doing business in the state on the part of the foreign corporation ordinarily depends on whether the effect of the terms of the particular contract is deemed to include the creation of a relation of principal and agent in respect to the foreign corporation's business. If it is, the corporation is ordinarily regarded as doing business in the state, although the existence of such a relationship may not be conclusive. If the effect of the contract is deemed to be no more than the creation of the relation of seller and buyer however, a contrary view is taken. The question depends on the sense of the agreement as a whole."

The plaintiff furnished the defendant with certain travelers' checks issued by the plaintiff bank in California. These travelers' checks were various denominations and comprised a total of $10,000. The defendant was to sell these travelers' checks to the public on a commission basis. The supply of travelers' checks in the amount of $10,000 was to be kept intact by frequent replenishment, and there was even a provision made for increase to $20,000 if the defendant's business warranted it. The plaintiff forwarded to the defendant application forms, covers and certain advertising material such as pamphlets, memo books, counter displays and blotters. Under the contract between the parties the travelers' checks were to be sold to the public at their face value plus 3/4 of one per cent., the defendant to retain 1/2 of one per cent. as his commission and to transmit to the plaintiff the full amount of the travelers' checks plus 1/4 of one per cent. commission.

■■ I conclude that the relationship between the plaintiff and defendant was one of agency. This is borne out by fact that the plaintiff procures a fidelity bond to protect the plaintiff from dishonesty of the seller and his employees. Even the bill of complaint in this action refers to the fact that the defendant agreed to act as agent for the sale of the travelers' checks, etc. But the mere fact that the plaintiff employed the defendant to serve as its agent is not conclusive on the question of whether or not the plaintiff was doing business in Massachusetts. In American Jurisprudence, Vol. 23, § 376, p. 370 the following appears: "Even though it is determined that the local representative of a foreign corporation in carrying on business in the state, acts in a fiduciary capacity as agent of the corporation, this is not in all cases conclusive that the corporation is carrying on business in the state. The contrary is held wherever such business may, nevertheless, properly be said to be that of the agent, rather than that of the principal. Transactions to which this rule has been applied include the sale by an independent travel bureau of tickets for transportation over the lines of a foreign corporation outside the state, Gloeser v. Dollar S. S. Lines, 192 Minn. 376, 256 N.W. 666 [95 A.L.R. 1470] * * * (and) dealings in respect of a foreign corporation's goods by one carrying on business as a factor or commission merchant, selling in his own name the goods consigned to him for sale * * * I. J. Cooper Rubber Co. v. Johnson, 133 Tenn. 562, 182 S.W. 593 [L.R.A. 1917A, 282]."

This rule was employed by Justice Brandeis in Bank of America v. Whitney Cent. Nat. Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594. In that case suit was brought

against a foreign bank which did business with six independent correspondent banks in New York City. After describing the nature of the business done by the defendant through the correspondent banks, Justice Brandeis says, 261 U.S. at page 173, 43 S.Ct. at page 311, "The Whitney Central had what could popularly be called a large New York business. The transactions were varied, important and extensive. But it had no place of business in New York. None of its officers or employees were resident there. Nor was this New York business attended to by any one of its officers or employees resident elsewhere. Its regular New York business was transacted for it by its correspondents—the six independent New York banks. They, not the Whitney Central, were doing its business in New York. In this respect their relationship is comparable to that of a factor acting for an absent principal." In Krause v. Hanover National Bank, 143 Wash. 518, 255 p. 934 the court held that the sale of travelers' checks by a local state bank did not constitute doing business in the state by a foreign bank which issued the travelers' checks. See also Union Internationale de Placements v. Hoey, 2 Cir., 96 F.2d 591, 593; Boston Medical Supply Co. v. Brown & Connolly, D.C., 98 F.Supp. 13.

■ From all of the foregoing I conclude and rule that the plaintiff Bank of America is not doing business within the Commonwealth of Massachusetts which would make it amenable to Chapter 181 of Massachusetts General Laws.

■ I conclude and rule that if it could be found that Bank of America is doing business in Massachusetts, Chapter 181 of the General Laws was not intended to cover an institution such as it is, a national banking institution.

■ I conclude and rule that if it could be held that Chapter 181 of the Massachusetts General Laws was intended to apply to the Bank of America, a national banking institution, that chapter would be repugnant to the banking laws of the United States and unconstitutional.

It is ordered that the fourth defense be stricken form the defendant's answer.