CIKLIN, J.
 

 Because the issues presented by the parties are virtually identical, we sua sponte consolidate these cases.
 

 In October of 2006, 770 PPR, LLC obtained a loan from Seacoast National Bank, a national banking association (“the bank”) in exchange for a mortgage on its restaurant site. Also, in October of 2006, the bank extended a loan to 140 Associates, Ltd., in exchange for a mortgage on its office building. Both loans were personally guaranteed by Gregory Talbott. After both loans went into default, the bank sued to foreclose the mortgage lien and recover the personal guaranty made by Talbott. On October 29, 2008, the trial court entered final summary judgment against each mortgagor as well as against Talbott (hereinafter referred to collectively as “the borrowers”).
 
 [1]
 

 
 *616
 
 While the borrowers admit their respective loans were in default, they contend reversal is warranted for two reasons. First, they argue that the bank’s failure to obtain and hold a “certificate of authority” from the Florida Department of State precluded the bank from transacting business in Florida including securing, collecting, and enforcing debts, mortgages, and security interests. Second, the borrowers assert that inconsistencies as to the monies owed to the bank contained in the bank’s verified complaint, loan statements, and affidavits in support of the bank’s motion for summary judgment created a genuine issue of material fact, thereby precluding summary judgment.
 

 The bank contends that the National Bank Act preempts Florida’s requirement that all foreign corporations doing business in Florida obtain a “certificate of authority” in order to, among other things, maintain lawsuits in this state. The bank further argues that the affidavits filed in support of its motion for summary judgment provided competent and substantial evidence to establish that no genuine issues of material fact existed, entitling it to summary judgment as a matter of law. We affirm.
 

 “When faced with questions of statutory application and federal preemption, we apply a de novo standard of review.”
 
 Many v. DaimlerChnysler Carp.,
 
 921 So.2d 781, 783 (Fla. 5th DCA 2006). Review of an order granting summary judgment is
 
 de novo. See Fla. Bar v. Greene,
 
 926 So.2d 1195,1200 (Fla.2006).
 

 Florida’s Requirement of Certificate of Authority
 

 Section 607.01401(12), Florida Statutes (2009), defines a foreign corporation as “a corporation for profit incorporated under laws other than the laws of this state.” Section 607.1501(1), Florida Statutes, states that “[a] foreign corporation may not transact business in this state until it obtains a certificate of authority from the Department of State.” Therefore, pursuant to Florida law, the bank was seemingly required to register and obtain a so-called certificate of authority from the Department of State. It is not disputed that at all times material hereto, the bank did not obtain or otherwise hold such a certificate.
 

 “In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress.”
 
 Cal. Fed. Sav. & Loan Ass’n v. Guen-a,
 
 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). “In only a few instances has Congress explicitly preempted state regulation of national banks. More commonly, it has been left to the courts to delineate the proper boundaries of federal and state supervision.”
 
 Natl State Bank, Elizabeth, N.J. v. Long,
 
 630 F.2d 981, 985 (3d Cir. 1980).
 

 “Under the Supremacy Clause, federal law may supersede state law in several different ways.”
 
 Hillsborough County, Fla. v. Automated Med. Labs., Inc.,
 
 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). First, Congress can preempt state law by so stating in express terms; known as “express preemption.”
 
 Menefee v. State,
 
 980 So.2d 569, 571 (Fla. 5th DCA 2008);
 
 see also Jones v. Rath Packing Co.,
 
 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). Second, “Congress’ intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is suffi
 
 *617
 
 ciently comprehensive to make reasonable the inference that Congress ‘left no room’ for supplementary state regulation.”
 
 Hillsborough County, Fla.,
 
 471 U.S. at 713,105 S.Ct. 2371 (citing
 
 Rice v. Santa Fe Elevator Corp.,
 
 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Referred to as “implied preemption,” this can also occur when an entire field is dominated by federal law.
 
 See Hines v. Davidowitz,
 
 312 U.S. 52, 61, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Finally, state law can be nullified if it actually conflicts with federal regulation in the same area; known as “conflict preemption.”
 
 Liggett Group, Inc. v. Davis,
 
 973 So.2d 467, 471 (Fla. 4th DCA 2007). “Such a conflict arises when ‘compliance with both federal and state regulations is a physical impossibility,’ or when state law ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ”
 
 Hillsborough County, Fla.,
 
 471 U.S. at 713, 105 S.Ct. 2371. (internal citations omitted).
 

 “The supremacy question is generally met with a presumption against preemption. However, this presumption is not implicated when the area of law analyzed is subject to significant federal presence.”
 
 Aguayo v. U.S Bank,
 
 658 F.Supp.2d 1226, 1231 (S.D.Cal.2009) (citing
 
 United States v. Locke,
 
 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000)). National banking is an example.
 
 Bank of Am,enea v. City & County of San Francisco,
 
 309 F.3d 551, 558 (9th Cir.2002).
 

 The National Bank Act (“NBA”), enacted over 150 years ago, was created to facilitate a national banking system and protect national banks from intrusive regulation by the States.
 
 See Kroske v. U.S. Bank Corp.,
 
 432 F.3d 976, 982 (9th Cir. 2005) (citing
 
 Marquette Nat’l Bank v. First of Omaha Serv. Corp.,
 
 439 U.S. 299, 315, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978)). 12 U.S.C. § 24 outlines the powers of a national bank incorporated pursuant to the NBA and states:
 

 Upon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organization certifícate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power—
 

 [[Image here]]
 

 Fourth. To sue and be sued, complain and defend, in any court of law and equity,
 
 as fully as natural persons.
 
 (emphasis added).
 

 Because this case presents a novel issue in Florida, we find the holdings in numerous foreign jurisdictions to be persuasive.
 

 In
 
 Bank of America, Nat’l Trust & Savings Ass’n v. Lima,
 
 103 F.Supp. 916 (D.Mass.1952), the defendant alleged that the plaintiff was doing business in Massachusetts without complying with Massachusetts General Laws Chapter 181. The court stated that “[sjection 24 of 12 U.S.C.A. includes among the powers of national banks the power ‘to sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons.’ The effect of this provision is to place national banks in the same category as individuals in suits by and against them.”
 
 Id.
 
 at 918. The court further held:
 

 [I]f the provisions of Chapter 181 are held to include national banks within the scope of them coverage, then the effect of that statute is to place national banks on the same level as foreign corporations as regards capacity to sue. Such a result is plainly unconstitutional, [sic] since it conflicts with the federal statute empowering national banks to sue as fully as natural persons.
 

 Id.
 
 In
 
 Ind. Nat’l Bank v. Roberts,
 
 326 So.2d 802, 802 (Miss.1976), the plaintiff-
 
 *618
 
 national bank filed suit in Mississippi state court to recover the balance due on a promissory note executed by the defendant. The defendant filed a motion to dismiss arguing that the plaintiff-national bank was a foreign corporation not qualified to do business in Mississippi and thus, not entitled to maintain suit in state court.
 
 Id.
 
 The plaintiff-national bank, citing 12 U.S.C. § 24, stated that as a national bank created under the NBA, they were not subject to such state requirements. The Mississippi court agreed, noting that because the language of 12 U.S.C. § 24 “is so clear and explicit, this Court has not been called upon to construe it.”
 
 Id.
 
 The court held that a statute “prohibiting a foreign corporation not qualified to do business in the State from maintaining any action in any court of the State, does not apply to a national banking corporation.”
 
 Id.
 
 at 803;
 
 see also First Nat’l Bank of Tonasket v. Slagle,
 
 165 Wash. 435, 5 P.2d 1013 (1931) (holding that state statute prohibiting foreign corporation from maintaining suit in Washington for failure to pay annual licensing fees did not apply to national banks in view of 12 U.S.C. § 24, Subdivision Fourth);
 
 State Nat’l Bank of Conn. v. Laura,
 
 45 Misc.2d 430, 256 N.Y.S.2d 1004, 1006 (Westchester County Ct.1965) (“[Sjince a national bank is brought into existence under federal legislation, it does not come within New York’s statutory requirements limiting the right of foreign corporations to sue. Specific authority to institute such an action as this plaintiff brings is provided in ... 12 U.S.C.A. § 24, Subdivision fourth.”).
 

 These cases demonstrate the law is well-established that a state cannot require a national bank to register or file as a “foreign corporation” in order to maintain a lawsuit in state court. In view of these holdings and the plain language of 12 U.S.C. § 24, Subdivision Fourth, we find that section 607.1502(1) is expressly preempted as applied to all national banking associations.
 

 Issues of Material Fact Precluding Summary Judgment
 

 The borrowers contend that conflicts as to the monies owed the bank contained in the bank’s verified complaint, loan statements and affidavits filed in support of its motion for summary judgment create a genuine issue of material fact.
 

 “On a motion for summary judgment, the moving party bears the burden to show the nonexistence of any disputed issues of material fact.”
 
 Delandro v. Am’s. Mortg. Servicing, Inc.,
 
 674 So.2d 184, 186 (Fla. 3d DCA 1996);
 
 see also Landers v. Milton,
 
 370 So.2d 368 (Fla.1979). “‘The party moving for summary judgment must factually refute or disprove the affirmative defenses raised, or establish that the defenses are insufficient as a matter of law.’ ”
 
 Leal v. Deutsche Bank Nat’l Trust Co.,
 
 21 So.3d 907, 909 (Fla. 3d DCA 2009) (citation omitted). Once the moving party “tenders competent evidence to support his motion, the opposing party must come forward with counterevidence sufficient to reveal a genuine issue. It is not enough for the opposing party merely to assert that an issue does exist.”
 
 Landers,
 
 370 So.2d at 370.
 

 In the instant case, the bank contends that any inconsistencies in the amount of monies owed by the borrowers are a reflection of new information obtained through discovery and the fluidity of interest and late fees accruing on a debt. Indeed, the affidavits filed in support of the bank’s motion for summary judgment provided a breakdown of the monies owed, including principal, interest and late fees.
 

 The bank’s affidavits also asserted that the borrowers were in default on the loans and demands for payment had been repeatedly ignored. Upon the presentation
 
 *619
 
 of the bank’s motion for summary judgment and supporting affidavits, the borrowers had an opportunity to refute those amounts.
 
 See Walker v. Midland Mortg. Co.,
 
 935 So.2d 519, 520 (Fla. 3d DCA 2006) (court held there was no disputed issue of fact regarding the amount owed on a mortgage where mortgagor was presented with the amount owed one week before foreclosure action).
 

 At no time have the borrowers offered a contrary calculation of the monies owed; they merely contend, by way of an affidavit in opposition to the bank’s motion for summary judgment, that they do not owe the amounts alleged by the bank. Such conclusory assertions are insufficient counter-evidence to avoid summary judgment.
 
 See TSI Southeast, Inc. v. Royals,
 
 588 So.2d 309, 310 (Fla. 1st DCA 1991) (“Counter-affidavits filed for purposes of avoiding summary judgment must be made on personal knowledge and must set forth the facts upon which the affiant relies. Mere conclusions by the affiant are insufficient, and a party does not create a fact question merely by placing his assertions in affidavit form.”) (citing
 
 Carter v. Cessna Fin. Corp.,
 
 498 So.2d 1319, 1321 (Fla. 4th DCA 1986) (internal citation omitted)).
 

 Therefore, the trial court’s order entering final summary judgment was appropriate and thus, we affirm.
 

 Affirmed.
 

 GROSS, C.J., and MAY, J., concur.
 

 [1]
 

 . In December of 2008, the bank gave TJCV Land Trust, a Florida Land Trust, an "Absolute and Irrevocable Assignment of Judg
 
 *616
 
 ment” for the claims against 770 PPR, LLC and the personal guaranty by Talbott on that loan.