[No. D058987. Fourth Dist., Div. One. Apr. 4, 2012.]

WELLS FARGO BANK, NA, as Trustee, etc., Plaintiff and Appellant, v. KARA L. BAKER et al., Defendants and Respondents.

**COUNSEL**

Haight Brown & Bonesteel, Jules S. Zeman, T. Vincent Consolo; Selman Breitman and Bradford G. Hughes for Plaintiff and Appellant.

The Schinner Law Group, Kenneth A. Brunetti, Jay T. Jambeck and Candice B. Macario for Defendants and Respondents.

**OPINION**

**McINTYRE, J.**—In this case, a national bank sued California residents in Iowa and served them via substitute service with the Iowa Secretary of State as allowed by Iowa's long-arm statute, Iowa Code section 617.3, subdivision (2) (section 617.3). The national bank obtained a default judgment against the California residents in Iowa and registered that judgment in California pursuant to the Sister State and Foreign Money-Judgments Act (Code Civ. Proc., § 1710.10 et seq.). The superior court vacated the judgment and the national bank appeals, contending the court erroneously interpreted section 617.3 to allow substitute service only when the contracting corporation was a "resident of Iowa" as this term is defined in section 617.3.

As we shall explain, we conclude that section 617.3, as it applies to national banks, is preempted by the National Bank Act because it infringes upon the power of a national bank to sue as fully as natural persons (12 U.S.C. § 24, Fourth). Accordingly, we reverse the order.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 2005, West Mullan Iowa LLC (West Mullan), an Iowa company, borrowed $868,950 from LaSalle Bank National Association (LaSalle) to purchase property in Waterloo, Iowa. Kara L. Baker and Dean W.

Baker (the Bakers) were California residents and members of West Mullan. They personally guaranteed repayment of the loan.

In March 2006, LaSalle assigned its interest in the loan to Wells Fargo Bank, NA (Wells Fargo). More than two years later, West Mullan stopped making loan payments. Wells Fargo filed suit in Iowa to foreclose on the property and collect on the personal guaranty. It hired a California process server to personally serve the Bakers. After numerous unsuccessful personal service attempts, Wells Fargo undertook substitute service, pursuant to section 617.3, by mailing copies of its mortgage foreclosure petition and notice to Iowa's Secretary of State and subsequently mailing those documents along with a certificate from the Secretary of State to the Bakers in California. The certified mail receipts indicate that the documents were returned to the sender because they were unclaimed.

In September 2009, the Iowa District Court entered a default judgment against the Bakers in the amount of $991,883.83. In July 2010, Wells Fargo filed an application for entry of judgment on a sister state judgment in the Superior Court of San Diego County. The clerk of the court entered the judgment as requested by Wells Fargo in the amount of $998,111.15.

The Bakers moved to vacate the sister state judgment, arguing that they were never served with the summons and complaint in the Iowa action and therefore the Iowa court did not have personal jurisdiction over them. In opposition, Wells Fargo claimed that the Iowa judgment was valid because the Bakers were served pursuant to section 617.3. The Bakers, however, countered by arguing that section 617.3 was inapplicable because LaSalle was not a "resident of Iowa" at the time the contract was made and thus, Wells Fargo was required to personally serve the Bakers.

The superior court vacated the sister state judgment, finding that Wells Fargo did not establish that the Iowa court acquired personal jurisdiction over the Bakers pursuant to section 617.3. The court interpreted section 617.3 to allow substitute service only when the contracting corporation was a "resident of Iowa." In order to satisfy this residency requirement, the contracting foreign corporation was required to hold a certificate of authority to transact business in Iowa. The superior court concluded that Wells Fargo did not show that LaSalle had a certificate of authority and thus vacated the sister state judgment. This appeal followed.

## DISCUSSION

### I. *The Sister State and Foreign Money-Judgments Act and Standard of Review*

■ Under the Sister State and Foreign Money-Judgments Act, a sister state judgment may be vacated "on any ground which would be a defense to an action in this state on the sister state judgment . . . ." (Code Civ. Proc., § 1710.40, subd. (a); see *Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 202 [106 Cal.Rptr.2d 854] (*Fidelity*).) While the statute does not identify the available defenses, the Law Revision Commission's comment to Code of Civil Procedure section 1710.40 explains that one common defense to enforcement of the judgment is that the judgment "was rendered in excess of jurisdiction." (Cal. Law Revision Com. com., 20 West's Ann. Code Civ. Proc. (2007 ed.) foll. § 1710.40, p. 385.) Appellate courts have interpreted this language to include cases where the sister state court lacked fundamental jurisdiction—i.e., in personam or subject matter jurisdiction—as determined by the law of the sister state. (*Fidelity*, at p. 202; *Bank of America v. Jennett* (1999) 77 Cal.App.4th 104, 114–116, 119 [91 Cal.Rptr.2d 359] [applying Hawaii's long-arm statute to determine personal jurisdiction over defendant].) The party moving to vacate the sister state judgment has the burden to show by the preponderance of the evidence why it is entitled to relief. (*Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 88 [15 Cal.Rptr.2d 585] (*Tsakos*).)

On appeal of the court's ruling, we apply settled principles of appellate review. (See *Tsakos, supra*, 12 Cal.App.4th at p. 89; *Zirbes v. Stratton* (1986) 187 Cal.App.3d 1407, 1412 [232 Cal.Rptr. 653].) As this matter involves a review of the trial court's determination of in personam jurisdiction, "we will not disturb the court's factual determinations 'if supported by substantial evidence.' [Citation.] 'When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record.' " (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 273 [127 Cal.Rptr.2d 329, 58 P.3d 2].) Applying these standards here, we determine the question of Iowa jurisdiction as a matter of law, based on the undisputed facts.

### II. *Analysis*

Section 617.3 provides: "If a nonresident person makes a contract with a *resident of Iowa* to be performed in whole or in part by either party in Iowa, . . . such act[] shall be deemed to be doing business in Iowa by such person for the purpose of service of process or original notice on such person under this section, and shall be deemed to constitute the appointment of the

secretary of state of the state of Iowa to be the true and lawful attorney of such person upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such contract . . . . *The term 'resident of Iowa' shall include any Iowa corporation, any foreign corporation holding a certificate of authority to transact business in Iowa, any individual residing in Iowa, and any partnership or association one or more of whose members is a resident of Iowa.*" (Italics added.)

For purposes of this statute, residency is determined at the time the contract is made. (*Mandernach v. Glass* (Iowa 1977) 253 N.W.2d 917, 918.) Thus, the question before us is whether LaSalle, a national bank and predecessor in interest to Wells Fargo, was a foreign corporation required to hold a certificate of authority to transact business in Iowa in order to qualify as a "resident of Iowa" and validly serve the Bakers via substitute service with the Iowa Secretary of State. Wells Fargo contends the trial court erred when it found that the Iowa court lacked personal jurisdiction over the Bakers. Among other things, it argues that section 617.3's certificate of authority requirement is preempted by the National Bank Act (12 U.S.C. § 1 et seq.). We agree that section 617.3's requirement that foreign corporations hold a certificate of authority to qualify as a "resident of Iowa," as it pertains to national banks, is preempted by the National Bank Act because it infringes upon the powers provided to national banks. Based on this conclusion, we need not consider Wells Fargo's remaining contentions.

It is undisputed that Wells Fargo and LaSalle are national banks. "Business activities of national banks are controlled by the National Bank Act . . . , 12 U.S.C. § 1 *et seq.*, and regulations promulgated thereunder by the Office of the Comptroller of the Currency (OCC)." (*Watters v. Wachovia Bank, N. A.* (2007) 550 U.S. 1, 6 [167 L.Ed.2d 389, 127 S.Ct. 1559] (*Watters*).) The purpose of the National Bank Act is to facilitate a national banking system and to protect banks from intrusive regulation by the states. (*Kroske v. U.S. Bank Corp.* (9th Cir. 2005) 432 F.3d 976, 982, citing *Marquette Nat. Bank v. First of Omaha Corp.* (1978) 439 U.S. 299, 315 [58 L.Ed.2d 534, 99 S.Ct. 540].)

"The N[ational] B[ank] A[ct] specifically authorizes federally chartered banks to engage in real estate lending. [Citation.] It also provides that banks shall have power '[t]o exercise . . . all such incidental powers as shall be necessary to carry on the business of banking.' " (*Watters, supra,* 550 U.S. at p. 7.) National banks can "do those acts and occupy those relations which are usual or necessary in making collections of commercial paper and other evidences of debt." (*Miller v. King* (1912) 223 U.S. 505, 510 [56 L.Ed. 528, 32 S.Ct. 243] (*Miller*).) Also included within a national bank's powers are the abilities "[t]o sue and be sued, complain and defend, in any court of law and

equity, as fully as natural persons." (12 U.S.C. § 24, Fourth.) "The effect of this provision is to place national banks in the same category as individuals in suits by and against them." (*Bank of America, National Trust & Savings Assn. v. Lima* (D.Mass. 1952) 103 F.Supp. 916, 918 (*Bank of America*).)

"As a general rule, state laws have been found applicable to national banks provided the state laws do not unfairly discriminate against national banks, favor state-chartered banks or frustrate, destroy, interfere with, or hamper national banks' exercise of their powers." (*First Union National Bank v. Burke* (D.Conn. 1999) 48 F.Supp.2d 132, 138 (*First Union*); see also *Memphis Bank & Trust Co. v. Garner* (1983) 459 U.S. 392, 397 [74 L.Ed.2d 562, 103 S.Ct. 692] (*Memphis Bank*) [holding that a state bank tax impermissibly discriminated against the federal government].) "[S]tate law may not significantly burden a national bank's own exercise of its real estate lending power, just as it may not curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the N[ational] B[ank] A[ct]." (*Watters, supra,* 550 U.S. at p. 13.)

Although the issue before us has not specifically been addressed in California, numerous foreign jurisdictions have considered whether title 12 United States Code section 24, Fourth preempts state laws requiring national banks to hold a certificate of authority before maintaining a lawsuit in those states. In *Indiana National Bank v. Roberts* (Miss. 1976) 326 So.2d 802, a bank sued the defendant in Mississippi to recover on a promissory note. The defendant filed a motion to dismiss on the basis that the bank could not maintain a lawsuit in Mississippi because it was a foreign corporation not qualified to do business in the state. (*Ibid.*) The trial court granted the motion and the Mississippi Supreme Court reversed, stating: "Unanimously, other state courts have held that a statute, similar to Mississippi's, prohibiting a foreign corporation not qualified to do business in the State from maintaining any action in any court of the State, does not apply to a national banking corporation." (*Id.* at p. 803.) A Florida Court of Appeal also held "a state cannot require a national bank to register or file as a 'foreign corporation' in order to maintain a lawsuit in state court." (*770 PPR, LLC v. TJCV Land Trust* (Fla.Dist.Ct.App. 2010) 30 So.3d 613, 618.) Similarly, a Texas Court of Appeals found a statute requiring a foreign bank to obtain a certificate of authority before it could maintain a lawsuit in Texas infringed on national banks' power to sue in any court of law and equity as fully as natural persons. (*In re Hibernia National Bank* (Tex.Ct.App. 2000) 21 S.W.3d 908, 910.)

The Bakers contend that cases concerning statutes that require a national bank to obtain a certificate of authority to "maintain a lawsuit" are distinguishable because Iowa's section 617.3 pertains only to service of process,

not the ability to sue. The Bakers argue that national banks "are as free as natural persons to avail themselves of Iowa courts. . . . And natural persons—just like corporations and banks—must be 'resident[s] of Iowa' to avail themselves of Section 617.3's long arm service provision." We are not convinced that there is a meaningful difference, as the Bakers suggest.

■ "Even the most limited aspects of state licensing requirements have been preempted because they created impermissible conditions upon the authority of a national bank to do business." (*Wachovia Bank, N.A. v. Watters* (W.D.Mich. 2004) 334 F.Supp.2d 957, 965.) National banks have the power to sue (12 U.S.C. § 24, Fourth) and engage in acts necessary to collect on debts. (*Miller, supra,* 223 U.S. at p. 510.) Section 617.3 curtails these powers by placing a burden on the ability of a national bank to efficiently conduct their business. Moreover, application of section 617.3's certificate of authority requirement contradicts the purpose of title 12 United States Code section 24, Fourth "to place national banks in the same category as individuals in suits by and against them." (*Bank of America, supra,* 103 F.Supp. at p. 918.)

Another critical issue here is that section 617.3 impermissibly discriminates against national banks in favor of local banks. (*First Union, supra,* 48 F.Supp.2d at p. 138; *Memphis Bank, supra,* 459 U.S. at p. 397.) A state-chartered Iowa bank could avail itself of section 617.3 without the additional hurdle imposed on national banks. It is especially discriminatory to require national banks to obtain a certificate of authority for the limited purpose of substitute service when Iowa does not require that certificate to conduct lending activities, including "[c]reating or acquiring indebtedness, mortgages, and security interests in real or personal property" and "[s]ecuring or collecting debts or enforcing mortgages and security interests in property securing the debts." (Iowa Code § 490.1501, subd. 2.g & h.)

■ The Bakers also argue that 12 Code of Federal Regulations part 34.4 excepts licensing requirements related to service of process from the National Bank Act's preemptive scope. That regulation provides: "A national bank may make real estate loans under 12 U.S.C. § 371 and § 34.3, without regard to state law limitations concerning: [¶] (1) Licensing, *registration (except for purposes of service of process)*, filings, or reports by creditors." (12 C.F.R. § 34.4(a)(1) (2011), italics added.) The parties have not cited to any authority and we have found none elaborating on the service of process limitation in the regulation. We also find nothing in the regulation's history from which to conclude that a state may impair a national bank's ability to collect on debts by imposing an additional burden on them for the limited purpose of using the state's long-arm statute. Rather, the history indicates that the list of inapplicable state laws was expanded in 2004 to codify principles of the National Bank Act preemption that were addressed by the OCC (Office of the

Comptroller of the Currency) and courts over several decades. (68 Fed.Reg. 45122–45133 (July 31, 2003); 69 Fed.Reg. 1911 (Jan. 13, 2004).) Neither the OCC nor the courts previously addressed the issue currently before us. In light of the long-standing rule that the states cannot interfere with a national bank's exercise of its powers (*Barnett Bank of Marion Cty., N. A. v. Nelson* (1996) 517 U.S. 25, 33–34 [134 L.Ed.2d 237, 116 S.Ct. 1103]; *Watters, supra*, 550 U.S. at p. 11), we find it implausible that Congress intended to limit the National Bank Act's preemptive scope such that states may require national banks to obtain certificates of authority to use their long-arm statutes.

■ In sum, we conclude that section 617.3's certificate of authority requirement infringes upon national banks' power to sue as fully as natural persons (12 U.S.C. § 24, Fourth) and Iowa's state-chartered banks. Thus, the trial court erred in vacating the sister state judgment on the basis that section 617.3 requires national banks to have a certificate of authority to use Iowa's substitute service procedures.

## DISPOSITION

The order is reversed and the matter is remanded to the trial court for the purpose of reinstating the sister state judgment. Wells Fargo is awarded costs on appeal.

Nares, Acting P. J., and McDonald, J., concurred.

A petition for a rehearing was denied May 1, 2012.