Brian WILLIAMS, Appellant

v.

CHASE BANK USA, N.A., Appellee.

No. 2010–CA–002034–MR.

Court of Appeals of Kentucky.

May 25, 2012.

Discretionary Review Denied by Supreme Court Feb. 13, 2013.

Phil Williams, Louisville, KY, for appellant.

James T. Hart, Cincinnati, OH, for appellee.

Before MOORE, NICKELL and THOMPSON, Judges.

NICKELL, Judge:

Brian Williams appeals from a Jefferson Circuit Court opinion and order granting summary judgment to Chase Bank USA, N.A., on its debt collection action and Williams's counterclaim.

On January 6, 2010, Chase Bank filed a complaint against Williams, alleging that he had defaulted on payments owing on a credit card, a Mastercard, issued to him by the bank. According to the complaint, the amount due and owing at that time was $22,044.55.

Williams filed an answer and counterclaim. He admitted use of the credit card. As an affirmative defense, he claimed that Chase was barred from bringing the lawsuit because it had failed to obtain a certificate of authority from the Secretary of State as required by statute. In his counterclaim, he alleged that as a result of oppressive agreements between Chase and various third-party merchants, he had suffered harm and was entitled to damages. The trial court ultimately granted summary judgment to Chase on the underlying action and Williams's counterclaim. This appeal by Williams followed.

In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996); Kentucky Rules of Civil Procedure (CR) 56.03.

At the time the underlying action was commenced, KRS 271B.15–020(1) provided as follows: "A foreign corporation transacting business in this state without a certificate of authority shall not maintain a proceeding in any court in this state until it obtains a certificate of authority." [1] The circuit court ruled that Chase was not required to comply with this requirement because the state statutory provision was preempted by the provisions of the federal National Bank Act (NBA) 12 U.S.C. § 1 *et seq.* Williams argues that the trial court erred in this ruling because none of the conditions that permit federal preemption are present in this case. Relying on the factors outlined in *Association of Banks in Insurance v. Duryee*, 270 F.3d 397 (6th Cir.2001), he contends that obtaining a certificate of authority does not present an obstacle to the accomplishment and execution of the NBA or impose an undue burden on the performance of the bank's functions. 270 F.3d at 403–405.

 "Preemption occurs under Article VI of the Constitution, the Supremacy Clause, which provides that the laws of the United States 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' U.S. Const. art.

---

1. The current version of the statute, which has been renumbered, is substantially similar and provides as follows: "A foreign entity transacting business in this Commonwealth without a certificate of authority may not maintain a proceeding in any court in this Commonwealth until it obtains a certificate of authority." KRS 14A.9–020(1).

VI, cl.2." *In re Johnson,* 460 B.R. 234, 245 (Bkrtcy.E.D.Ark., 2011). The NBA was enacted in 1864, "establishing the system of national banking still in place today." *Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 11, 127 S.Ct. 1559, 1566, 167 L.Ed.2d 389 (2007). Since its enactment, the United States Supreme Court has "repeatedly made clear that federal control shields national banking from unduly burdensome and duplicative state regulation." *Id.,* 550 U.S. at 11, 127 S.Ct. at 1566–67. The Court has "interpret[ed] grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily preempting, contrary state law." *Id.* "[W]hen state prescriptions significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way." *Id.*

■■■ The question then is whether KRS 271B.15–020(1), which requires a foreign corporation to obtain a certificate of authority to maintain a proceeding in a Kentucky court, significantly impairs Chase's exercise of authority, enumerated or incidental, under the NBA. Recently, in *770 PPR, LLC v. TJCV Land Trust,* 30 So.3d 613, 617 (Fla.App. 4 Dist., 2010), a factually-similar federal preemption question was addressed by a panel of the District Court of Appeal of Florida. Under Florida law, foreign corporations are required to obtain a certificate of authority prior to transacting business in the state. The Florida appellants argued that the appellee bank's failure to obtain such a certificate precluded the bank from foreclosing on their mortgages. The appellate court held that the state statute was preempted by the NBA. We set forth the pertinent portion of the opinion:

> The National Bank Act ("NBA"), enacted over 150 years ago, was created to facilitate a national banking system and

protect national banks from intrusive regulation by the States. *See Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 982 (9th Cir.2005) (citing *Marquette Nat'l Bank v. First of Omaha Serv. Corp.,* 439 U.S. 299, 315, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978)). 12 U.S.C. § 24 outlines the powers of a national bank incorporated pursuant to the NBA and states:

> Upon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power—
>
> . . . .
>
> Fourth. To sue and be sued, complain and defend, in any court of law and equity, *as fully as natural persons.*

> (emphasis added).

Because this case presents a novel issue in Florida, we find the holdings in numerous foreign jurisdictions to be persuasive.

In *Bank of America, Nat'l Trust & Savings Ass'n v. Lima,* 103 F.Supp. 916 (D.Mass.1952), the defendant alleged that the plaintiff was doing business in Massachusetts without complying with Massachusetts General Laws Chapter 181. The court stated that "[s]ection 24 of 12 U.S.C.A. includes among the powers of national banks the power 'to sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons.' The effect of this provision is to place national banks in the same category as individuals in suits by and against them." *Id.* at 918. The court further held:

> [I]f the provisions of Chapter 181 are held to include national banks within

the scope of their coverage, then the effect of that statute is to place national banks on the same level as foreign corporations as regards capacity to sue. Such a result is plainly unconstitutional. [sic] since it conflicts with the federal statute empowering national banks to sue as fully as natural persons.

*Id.* In *Ind. Nat'l Bank v. Roberts*, 326 So.2d 802, 802 (Miss.1976), the plaintiff-national bank filed suit in Mississippi state court to recover the balance due on a promissory note executed by the defendant. The defendant filed a motion to dismiss arguing that the plaintiff-national bank was a foreign corporation not qualified to do business in Mississippi and thus, not entitled to maintain suit in state court. *Id.* The plaintiff-national bank, citing 12 U.S.C. § 24, stated that as a national bank created under the NBA, they were not subject to such state requirements. The Mississippi court agreed, noting that because the language of 12 U.S.C. § 24 "is so clear and explicit, this Court has not been called upon to construe it." *Id.* The court held that a statute "prohibiting a foreign corporation not qualified to do business in the State from maintaining any action in any court of the State, does not apply to a national banking corporation." *Id.* at 803; *see also First Nat'l Bank of Tonasket v. Slagle*, 165 Wash. 435, 5 P.2d 1013 (1931) (holding that state statute prohibiting foreign corporation from maintaining suit in Washington for failure to pay annual licensing fees did not apply to national banks in view of 12 U.S.C. § 24, Subdivision Fourth); *State Nat'l Bank of Conn. v. Laura*, 45 Misc.2d 430, 256 N.Y.S.2d 1004, 1006 (Westchester County Ct.1965) ("[S]ince a national bank is brought into existence under federal legislation, it does not come within New York's statutory requirements limiting the right of foreign corporations to sue. Specific authority to institute such an action as this plaintiff brings is provided in ... 12 U.S.C.A. § 24, Subdivision fourth.").

These cases demonstrate the law is well-established that a state cannot require a national bank to register or file as a "foreign corporation" in order to maintain a lawsuit in state court. In view of these holdings and the plain language of 12 U.S.C. § 24, Subdivision Fourth, we find that section 607.1502(1) is expressly preempted as applied to all national banking associations.

*770 PPR, LLC v. TJCV Land Trust*, 30 So.3d 613, 617–618 (Fla.App. 4 Dist., 2010).

■ We find the reasoning of our sister court in Florida to be persuasive, specifically as it relates to the preemptive effect of 12 U.S.C. § 24, and therefore affirm that portion of the summary judgment holding that the NBA preempts KRS 271B.15–020(1). Accordingly, Chase Bank was not required to obtain a certificate of authority before filing its suit against Williams.

■ Williams further argues that even if the NBA exempts banks from the requirements of KRS 271B.15–020, there was no evidence to support the circuit court's finding that Chase is a national chartered bank. In its complaint, Chase identified itself as Chase Bank USA, N.A. N.A. is an acronym for "national association." In response to Williams's memorandum opposing the motion for summary judgment, Chase attached a printout from the FDIC's online directory, which states that Chase Bank USA, National Association is "chartered as a National Bank." "[A] party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genu-

ine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky.1991). Thus, there is no ground for reversal as Williams has produced no affirmative evidence that there is a material issue of fact regarding Chase's status as a chartered national bank.

Finally, Williams argues that the circuit court erred in granting summary judgment to Chase on his counterclaim without affording him an adequate opportunity to conduct discovery. In his counterclaim, Williams alleged that Chase and Mastercard had contractual agreements with various third-party merchants which prohibited the merchants from offering a discounted price or price reduction to customers who purchase goods and services using a competitor's credit or debit card, even if the fees due to the card issuer were less than the fees charged by Chase. He argued that he was prevented from receiving goods or services at the lowest possible price because third-party merchants were obligated not to offer any discounts to customers using a competing card. He alleged that the contracts between Chase and the merchants were inequitable, against public policy, and violated federal and state law, specifically the Kentucky Consumer Protection Act, KRS 367.170 and KRS 367.175.

KRS 367.170 provides in pertinent part as follows:

> (1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
>
> (2) For the purposes of this section, unfair shall be construed to mean unconscionable.

KRS 367.175(1) provides that "[e]very contract, combination in the form of trust and otherwise, or conspiracy, in restraint of trade or commerce in this Commonwealth shall be unlawful."

■ The circuit court granted summary judgment to Chase on the counterclaim because Williams lacked privity to assert a claim under the Consumer Protection Act. "To maintain an action alleging a violation of the [Consumer Protection] Act, ... an individual must fit within the protected class of persons defined in KRS 367.220." *Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.* 836 S.W.2d 907, 909 (Ky.App. 1992). That statutory definition provides in pertinent part as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action under the Rules of Civil Procedure in the Circuit Court in which the seller or lessor resides or has his principal place of business or is doing business, or in the Circuit Court in which the purchaser or lessee of goods or services resides, or where the transaction in question occurred, to recover actual damages.

KRS 367.220(1).

■ The Kentucky Supreme Court has construed this provision to mean that an individual must be a purchaser with privity of contract in order to have standing to bring an action under the Act. "The legislature intended that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act." *Skilcraft*, 836 S.W.2d at 909. Although Williams does have a cardholder agreement with Chase, he was not a party to the agreements between the merchants and Chase which caused his alleged damages; therefore, he does not have standing

to maintain an action under the Consumer Protection Act.

Williams also raised unspecified federal, common law, and equitable claims stemming from the same allegations regarding the effects of Chase's agreements with merchants. As a matter of law, these claims must fail because they are remote and derivative.

At common law, "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992) (incorporating remoteness jurisprudence into the test for RICO standing). This concept is thoroughly ingrained in American law. Kentucky is no exception to the general rule. *See Shields v. Booles*, 238 Ky. 673, 38 S.W.2d 677, 679 (1931).

*Kentucky Laborers Dist. Council Health and Welfare Trust Fund v. Hill & Knowlton, Inc.*, 24 F.Supp.2d 755, 761–62 (W.D.Ky.1998). In a similar suit brought by customers against credit card companies alleging that the companies' tying of credit card services to debit card services caused the merchants to pay excessive fees which they then passed on to consumers in the form of artificially inflated prices, the Supreme Court of Nebraska concluded that "even if the merchants had paid overcharges for debit services, it did not result in an actionable claim for any perceived injuries to the merchants' customers. Those injuries were too remote and derivative to countenance such a cause of action." *Kanne v. Visa U.S.A., Inc.*, 272 Neb. 489, 723 N.W.2d 293, 302 (2006), citing *Ho v. Visa U.S.A., Inc.*, 16 A.D.3d 256, 793 N.Y.S.2d 8 (N.Y.App.Div.2005). The fact that Chase's agreements with unspecified merchants may result in higher charges to those merchants that may then be passed on to customers does not create a cause of action for any perceived damages incurred by those customers.

Because his counterclaim fails as a matter of law, we need not address Williams's argument that he was not allowed adequate time to conduct discovery. For the foregoing reasons, the opinion and order granting summary judgment to Chase Bank USA, N.A. is affirmed.

ALL CONCUR.